# The People of the State of Illinois, Defendant in Error, v. Alexander Busch and Zenon Ulanowski, Plaintiffs in Error.

## Gen. No. 27,869.

1. CRIMINAL PROCEDURE—*confessed perjury of material witness as ground for new trial.* It was error to deny a·new trial to defendants convicted of conspiracy to defraud by burning insured property where substantially the only evidence of guilt consisted of the testimony of two of the conspirators who turned State's evidence, notwithstanding the other evidence strongly tended to show the fire to have been of incendiary origin and there was slight evidence to show motive, where the peculiar facts and circumstances show that a conviction could not have been had without the testimony of one of such two witnesses who admitted at the trial having set the fire for a money consideration paid by the other plaintiffs in error, and where the motion for new trial is predicated upon the affidavit of such witness that his testimony at the trial was perjured, even though there was an unexplained delay of eight months in filing such affidavit which was made within one week after the trial.

2. CRIMINAL PROCEDURE—*when secondary evidence receivable.* In the trial of an indictment of corporation officers for conspiracy to defraud by the burning of insured property owned by the corporation, where defendants sought to negative motive by showing that they were minor stockholders and that an indebtedness due them from the corporation had been released by them before the fire, it was improper to restrict their proof thereof to the books of the corporation as the best evidence, where it appeared that all the corporate books had been taken into the possession of the State's Attorney immediately after the fire and that defendants were unable to secure possession of them after frequent and futile attempts and where the State's Attorney did not deny that the books had been in his possession or explain how or when they disappeared therefrom.

Error by defendants to the Criminal Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Reversed and remanded. Opinion filed February 13, 1923.

GEORGE GUENTHER, M. J. ST. GEORGE and ERNEST

C. RENIFF, for plaintiffs in error; THOMAS E. SWANSON and ELWYN E. LONG, of counsel.

ROBERT E. CROWE, for defendant in error; HARRY I. CHACE, JR., EDWARD E. WILSON and CLYDE C. FISHER, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Plaintiffs in error were convicted upon an indictment charging them and others with a conspiracy, among other things, to defraud, the gravamen of the charge being that the defendants conspired to set fire and burn a stock of goods belonging to the Associated Polish Traders & Importers Corporation, of which plaintiffs in error were members and officers, for the purpose of collecting the insurance thereon.

The indictment was returned April 21, 1921. The verdict was rendered July 6, 1921. The motion for a new trial then made was continued to the September term, and after various continuances it was overruled on March 11, 1922.

It is urged that the evidence was insufficient to sustain the verdict, and that the court erred in rulings upon evidence and instructions and in refusing to grant a new trial.

While the motion for a new trial rests upon these various contentions, it is also predicated upon an affidavit of one of the indicted parties who testified for the People, in which he alleges that he perjured himself and was suborned so to do by persons acting in behalf of the insurance companies that insured the property.

The question presented by such affidavit is a serious one, because to recognize the affidavit as furnishing sufficient ground for a new trial may establish a dangerous precedent, and to disregard it would cast grave doubt upon the justice of the conviction. Con-

sideration of its importance requires a brief statement of the facts.

Plaintiffs in error Ulanowski and Busch, were president and vice president, respectively, of, and stockholders in, said corporation, which conducted a grocery store in Chicago. A fire was discovered in the basement of the store about nine o'clock in the evening of January 26, 1920, which was put out by a fire company in about an hour. The insurance on the goods was carried in various companies, and aggregated the sum of $123,000. Defendants claimed a loss of about $82,000. The value as estimated by a witness for the People, a grocer familiar with the stock, was several thousand less.

It was the theory of the People that the officers and others of the Traders corporation arranged with John A. Hintzke, active manager of the store, and Fred A. Beyer, who did hauling for the concern, to set the fire, for which Hintzke and Beyer were to be paid $2,000 after the insurance was paid, and that pursuant to the arrangement Hintzke placed a lighted wax candle in the basement between boxes of matches, from which the blaze broke out about three hours afterward.

Included with plaintiffs in error as defendants to the indictment were Markowicz, the company's sales manager, Napiorkowski, its secretary, Barys, its shipping clerk, and said Hintzke and said Beyer. Markowicz seems to have been the only defendant put on trial with plaintiffs in error. All three were found guilty, but he did not join in suing out this writ.

Hintzke and Beyer turned State's evidence and each testified to conversations had at different times with one or more of the defendants within a week or two before the fire. There were six of these alleged conversations before the fire and three after it. Both Hintzke and Beyer testified that the first conversa-

tion was had with Ulanowski, during which he proposed to them the setting of the fire; that the second was had a few days later when Ulanowski offered them $2,000 to set the fire, at which Busch, Markowicz and Napiorkowski were present, the two former expressly concurring in the proposition; the third, fourth and sixth conversations were testified to by Hintzke alone, and the fifth by Beyer alone. Hintzke claimed that the third was had with Ulanowski and Markowicz, at which he assented "to do the job"; that the fourth was had with Busch alone, who then suggested the use of benzine, and the sixth with Ulanowski, between the time of placing the candle and the breaking out of the fire. While Hintzke claimed that Beyer was present at the fourth conversation, the latter testified that he had no further conversation with Busch after the second conversation. Beyer's testimony as to the fifth conversation was to the effect that Ulanowski suggested smashing the gas meter to make the fire larger. No one else was present. Beyer testified to three subsequent conversations with Ulanowski relating to what had been done and the expected remuneration, at two of which he claimed Hintzke was present. We do not find that Hintzke testified with regard to them.

Aside from the testimony as to these conversations, all of which were expressly denied by the other parties alleged to have been present, the evidence on the part of the People consisted mainly of the testimony of the captain of the crew of firemen who put out the fire, with respect to conditions he found there, of said witness who estimated the value of the goods as inventoried, and of a brother of Hintzke who testified in effect to subsequent admissions by Ulanowski of his complicity in the conspiracy.

While the evidence tends strongly to show that the fire was of incendiary origin and there were circumstances, though not very persuasive, tending to show

motives on the part of plaintiffs in error, yet without the conversations there was little evidence upon which to rely for a conviction. The jury, therefore, must have given credence to the People's evidence as to the conversations. We would not be disposed to disturb their conclusions, however, if there was no reversible error in the record and the peculiar facts presented on hearing the motion for a new trial were not before us.

The effect of Hintzke's affidavit and testimony in support thereof was to impeach his own testimony, and as a rule a new trial will not be granted merely to give an opportunity to impeach a witness. But an exception to the rule has been made where it appeared that a material witness admitted that he committed perjury. Several cases recognizing the exception were referred to in *People v. Heinen*, 300 Ill. 498, and need not be here reviewed. In that case the prosecuting witnesses, who identified the defendants, subsquently wrote to the State's Attorney, saying in effect that they were convinced that they should not have identified them and would not do so on a rehearing. The court said, in substance, that the whole structure of the case rested upon their testimony, and that as the letters showed that they thought they were mistaken as to the identity of the defendants, and thus destroyed the probative force of their testimony on that point, the trial court erred in not vacating the judgment and granting a new trial. While there was no wilful perjury in that case and what was stated in their letters was not questioned, as is the affidavit here, and the conviction depended upon the correctness of the identification, yet the decision was grounded upon considerations not inapplicable to this case. Among other things the court said:

"Surely it cannot be said that another jury hearing these statements from the prosecuting witnesses would nevertheless return the same verdict.   *   *   *

Can we, therefore, say * * * that a court in reviewing their testimony, together with their subsequent letters, could have a feeling of confidence that their identification was correct?"

If we present the query as to our confidence in Hintzke's testimony given at the trial when considered with his affidavit and · testimony presented on the motion for a new trial, we must admit it is considerably shaken. We think it is apparent that without the conversations there would not have been a conviction. There was nothing in the way of corroborative circumstances or otherwise that was conclusive, or strongly persuasive, and it is highly doubtful whether defendants would have been found guilty but for the testimony of Hintzke with respect to such conversations. While Beyer still maintained that his testimony was true, his own testimony indicates that he was a man of limited education and intelligence, having no compunction in committing a crime for a money consideration. The testimony of such a man, uncorroborated, would be worthy of little consideration when directly contradicted by many witnesses shown to have a good reputation. We may therefore infer that without Hintzke's testimony there would have been no conviction.

But Hintzke's admission and the account he gives of himself on the hearing of the motion for a new trial, whether true or ·false, indicate that he is an absolutely unreliable person. He either committed perjury at the trial or at the hearing of the motion and should unquestionably be prosecuted therefor, and while after comparing the testimony heard at the trial with that given at the hearing, and considering the motives that may have actuated the several witnesses, it is difficult to determine where the truth lies, yet the unusual and extraordinary state of facts presented and the doubts they cause constrain us to think that a new trial should have been granted. While there were many inconsistencies in Hintzke's

story, yet the fact that he apparently stood willing to take punishment in the penitentiary for his perjury rather than see plaintiffs in error sent there on his testimony, may well shake confidence in the credibility of his testimony given at the trial. Had he stood convicted of a crime that would send him to the penitentiary or was to receive any special benefit therefrom, we might find a motive for his exculpating plaintiffs in error. Otherwise, in the absence of other evidence, it is difficult to ascribe a satisfactory motive for his taking a position likely to send him there instead of them.

As we view it, it is not a question for us to determine whether we believe his recantation. Reasons might be urged for rejecting it, among them, the fact that the affidavit in question was made within one week after the trial and not filed for eight months—until within about one week before the hearing of the motion. It might well be asked if defendants themselves put faith in it why, during the interval, did they secure postponements of the hearing of the motion? And why should they not have revealed at once to the court, if not to the State's Attorney, the contents of the affidavit instead of waiting that length of time? And, too, why, when Beyer had gone before the grand jury and procured previous indictments charging Ulanowski and Hintzke, and later some of the other defendants, with the conspiracy, should Hintzke have taken the witness stand against his codefendants to save himself if there was not some basis for the charge? But while these questions present themselves with such force as to weaken Hintzke's affidavit, we cannot deem it compatible with justice that under the extraordinary circumstances of the case a new trial should not be granted. The result may be the acquittal of men guilty of the charge, but such result is preferable to a conviction that may rest mainly upon perjury. If we apply one of the

tests considered in the *Heinen* case, it can hardly be said, taking the testimony heard on the motion for a new trial with that heard at the trial, a jury could say that defendants were guilty beyond a reasonable doubt, or that we can feel that justice has been done. In the *Heinen* case it was said:

"Where there is diligence, and the new matter does not conflict with the rule concerning cumulative evidence, and is such as to strengthen the conviction that justice has not been done, a new trial should be granted."

But if diligence is essential, it might be urged that there was a lack of it in presenting the matters raised on the motion for a new trial. There would be some force to that contention if it did not appear from the record that the State's Attorney assented to many of the continuances and made no serious opposition thereto until the last continuance in March, 1922. Such delay to hear the motion seems inexcusable under any circumstances. Motions for a new trial should be disposed of as soon as possible and practicable. Repeated continuances of them is a practice calculated to defeat the ends of justice and make a mockery of the theory of speedy trials and prompt justice. In the case at bar it may be questioned whether if the motion for a new trial had been heard immediately after the trial the affidavit in question would have been presented. But while delay acquiesced in by the People cannot be charged wholly to plaintiffs in error, and we are reluctant to take a position that may encourage such an assault after trial upon the evidence upon which conviction is had, yet, for the reasons stated, we feel constrained to hold that it was error, under the circumstances, not to have granted a new trial.

While in view of this conclusion it is unnecessary to review errors alleged to have been committed in the course of the trial, yet one or two of them should receive notice. As indicating a lack of motive on the

part of plaintiffs in error to enter into such a con-
spiracy they sought to show that their interest as
stockholders in the concern was only to the extent
of $1,000 each.  It was insisted by the State that the
books of the corporation constituted the best evi-
dence on that subject.  These books were taken from
the office of the corporation shortly after the fire
to that of the fire marshal, and later, some of them
at least, to the office of the State's Attorney.  There
were some twenty of these books.  Ulanowski tes-
tified that he had only ten shares of stock at $100 a
share in the corporation, but he was not permitted
to show the number of stockholders, which were
claimed to be about 400.  It was claimed, too, on the
part of the People as a motive for the conspiracy
that the Traders Corporation owed plaintiffs in er-
ror considerable money at the time of the fire.  Plain-
tiffs in error sought to prove that they released such
indebtedness before the fire but were not permitted
to put the fact in evidence without producing the
books of the corporation, although it did not appear
that the books would show that fact.  Regardless of
what they would show, however, defendants' counsel
stated that they had made frequent and futile efforts
to obtain the books, and showed by the deputy fire
marshal that they were not in possession of the fire
marshal and that he had been informed by a former
attaché of his office, who could not be found, that
they had been turned over to the State's Attorney's
office.  Counsel stated further that after inquiries at
the State's Attorney's office they had been unable to
find more than two of the books there.  Whereupon
the assistant State's Attorney trying the case said
that "the State's Attorney has not got them and
we have not seen them," and for that reason he ob-
jected to secondary evidence on the subject of their
contents.  Possibly defendants' counsel did not in-
quire of the proper persons in the State's Attorney's

office, of which there is a considerable number. But the State's Attorney represented the opposite party in the case and neither denied that defendants' books had been in his possession nor offered to show how or when they disappeared therefrom, and the court thought a sufficient foundation had not been laid for secondary evidence.

We think the ruling was too rigid if not error. Where documents are traced to the possession of the opposite party in the case and not produced on demand or due notice to produce them at the trial, secondary evidence of their contents is admissible; and it seems strange that without offering to account for the rest of the books that were traced to the State's Attorney's office and presumptively, without further explanation, still in his possession, the assistant State's Attorney trying the case should have urged objection to secondary evidence of their contents on a matter that clearly tended to negative some of the motives ascribed for the conspiracy. The court should have required the State's Attorney to produce the books or give a reasonable account for their disappearance, and the State's Attorney or his assistant should, in fairness to the court and defense, have volunteered the fullest information on the subject of which he was possessed.

In our view of the case, as above stated, we deem it unnecessary to discuss other points.

Accordingly the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

MORRILL and GRIDLEY, JJ., concur.