Doss *v.* STATE.

4233                                    157 S. W. 2d 499

Opinion delivered December 22, 1941.

*C. C. Hollensworth, Carl Hollensworth* and *C. T. Sims,* for appellant.

*Jack Holt,* Attorney General, and *Jno P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J. Appellant has appealed from the judgment of the Ashley circuit court sentencing him to a term of five years in the penitentiary upon his conviction for carnally knowing Merle Jean Estelle, a female under the age of 16 years.

There is no question about the age of the girl, and she testified that appellant had sexual intercourse with her on frequent occasions while she was under the age of 16. It is conceded that the law requires no corroboration of her testimony to support the conviction; but it is very earnestly insisted that there is no other testimony that the sexual act was committed, and that her testimony is so thoroughly discredited as to be unworthy of belief.

There was, however, corroborating testimony. A physician and surgeon who examined the girl testified that her vagina, so far as its distention was concerned, was that of a married woman. Appellant, a single man, operated a small store, and had a bedroom attached to it. It was shown that Merle made frequent visits to this place, and Joe Burris, a colored employee of appellant, testified that she spent the entire night there with appellant, and he saw them in bed together. The universal knowledge of human frailty is such that the jury had the right to regard this as corroboration of the girl's testimony that sexual relations were indulged, especially so as the girl had a home of her own in the same town, where she could have spent the night; indeed, her home was near that of appellant.

The girl's conduct, testimony and correspondence show that she was deeply infatuated with appellant. Much of her testimony is preposterous, even grotesque. She attempted to excuse her fall from virtue by saying that appellant induced her to smoke marijuana cigarettes, which excited her amorous propensities and lessened her power to resist appellant's importunities. In that connection, she testified that she drove with appellant to Jacksonville,

Florida, to procure these cigarettes. They spent only a few hours in Jacksonville, which she described as a city larger than Hamburg, but not as large as Crossett, when we know, from the federal census, that Jacksonville is a city many times larger than those towns combined. While the jury must necessarily have disregarded this and much other testimony given by the girl, it was their province to sift the truth from the falsehoods.

It was shown that the girl's father made earnest and repeated, but unsuccessful, efforts to prevent his daughter from going with appellant and to his home. As a means to that end he preferred a delinquency charge against her and caused her to be sent to the State Training School for Girls, where she was confined for three months. The authorities of that institution refused to permit her to correspond with appellant or to be interviewed by his attorneys, and this action is assigned as error. When she returned home for the trial appellant's attorneys sought to interview her privately, and asked the court to grant them this permission. The court refused to grant this permission, and that action is assigned as error. But the court did order that they be allowed to see the girl and question her in the presence of her father and mother. This was a matter within the discretion of the trial court, and we are unable to say that this discretion was abused.

It is assigned as error that the court improperly refused to permit the introduction of testimony to impeach that of Burris, the colored man. Burris admitted, when called as a witness, that he had previously made statements conflicting with his testimony to the effect that he had seen appellant and the girl in bed together; but he testified that he had made those statements through fear.

The father of appellant was called as a witness, and was asked: "Q. Were you with me when I took Joe Burris to a side room in the city hall at Crossett, Arkansas, and talked to him regarding the facts in his case and in the case of your son?" He answered, "Yes, sir." He was then asked: "Q. Joe Burris testified in this case yes-

terday under oath that when I was examining him I didn't tell him on that occasion to tell me the exact truth of the situation regarding the charges made against him and against your son in this case of carnal abuse. Please state whether or not that statement of Joe Burris is true or untrue." To this question the prosecuting attorney made the following objection: "That testimony was testimony that the state did not bring out. It was testimony Mr. Sims brought out himself on behalf of the defendant, clearly independent of any cross-examination, or any legitimate cross-examination. It was not responsive to the general examination and for that purpose he made that witness, his witness, and he has no right to impeach that part of his testimony." The court ruled as follows: "The court will not permit that question to be answered, and for an entirely different reason than that advanced, and that is, the only probative value of that proof, if any, in this case would be to attack the integrity and official position of Mr. C. T. Sims, a lawyer in this case, and his character and the performance of his official duty is not under question. The answer will not be permitted."

We have read the testimony of Burris to which counsel referred. The witness was asked: "Q. Didn't you tell Mr. Doss (appellant's father) in my presence that day this young lady never stayed out there at night?" The witness answered: "Yes, sir, but I was afraid to." The witness admitted he had told a lie, and, when asked why he had done so, he answered: "A. I don't know, I just don't. So after I looked into it myself, I thought it would be better for me to tell the truth." Counsel asked: "Q. Now when I talked to you down at Crossett that day in the presence of Mr. Doss, A. Z.'s (appellant's) father, I didn't try to make you tell me anything but the truth, did I?" The witness answered: "A. That's right."

This answer exonerated the attorney from the imputation that he had attempted to suborn the witness, but none had been made. The testimony of Mr. Doss, Sr., would have proved that the negro had told a lie; but he admitted that, and explained why he had lied.

We take occasion, however to say that it were better if trial courts were more patient and allowed counsel more

latitude in such matters. The testimony of the negro was very damaging to appellant, and full opportunity should have been afforded to contradict it by impeachment or otherwise, and we will not hesitate to reverse a judgment of conviction when that right has been denied. However, we will not reverse the judgment here, because proof that the negro had lied would have added nothing to his own admission that he had done so.

A supplemental motion for a new trial was filed, to which was attached the affidavit of the girl alleged to have been carnally known, in which she retracted her testimony given at the trial, and stating the fact to be that there had never been any improper relation between herself and appellant.

Cases on this subject were reviewed in the recent case of *Sutton* v. *State*, 197 Ark. 686, 122 S. W. 2d 617, which, like the instant case, was an appeal from a conviction for carnal abuse, where the female alleged to have been carnally known retracted and repudiated her testimony. A headnote to that case reads as follows: "After appellant had been convicted of carnal abuse, a motion for a new trial with an affidavit of the recanting prosecuting witness attached, but who was not brought into court for examination as to the circumstances relating to her recantation and without showing that this action was voluntary on her part, was properly denied."

In this case, as in that, the writing bears upon its face conclusive evidence that the girl did not write the statement, although she signed and swore to it; and in this case, as in that, she was not brought into court for examination as to the circumstances relating to her recantation.

It is argued that she was in court for that purpose, and certiorari was sued out to have the record show that fact; but the return upon the writ contains no evidence to that effect. Other questions raised have been considered, but a discussion of them is thought unnecessary.

Upon the whole case we find no error, and the judgment must be affirmed, and it is so ordered.