YESSEN *v.* STATE OF INDIANA

[No. 28,601.   Filed May 24, 1950.]

Emmert, C. J., and Gilkison, J., dissent with opinions.

*Louis E. Kunkel,* of Michigan City, for appellant.

*J. Emmett McManamon,* Attorney General; *Charles F. O'Connor* and *Walter O. Lewis,* Deputy Attorneys General, for appellee.

JASPER, J.—Appellant was charged by affidavit with rape, under § 10-4201, Burns' 1942 Replacement. He waived a trial by jury, and the cause was submitted to the court on a plea of not guilty. Finding and judgment were entered against appellant and sentence followed.

The only error claimed by appellant is the overruling of his motion for a new trial.

Appellant contends that the finding of the court is contrary to law and is not sustained by sufficient evidence.

The testimony of Lois Ann Warner, being first questioned by the court for competency, showed that she was twelve years of age and was in Grade 4-B of school, that she understood the penalty for telling a falsehood or a lie, that it was an offense under her religion and the law to tell an untruth, and that in taking the oath to tell the truth she understood she was to tell nothing but the truth. Appellant desired no further examination, and had no objection to the competency of the witness to testify.

Her testimony on examination further showed that she resided in Michigan City with Paul Owens and his wife; that she was twelve years of age; that she first met appellant in April, 1948, and that they had a conversation; that she met him later in the summer at the park, and, between first seeing him and meeting him in the park, she had seen appellant about five other times; that a couple of times he asked her to go down to the park to meet him; that on one occasion when she met him in the park she had been swimming, was alone, and had agreed to meet appellant by the bandstand; that the meeting took place about 6:30 o'clock in the evening, before dark, and there were not many people around; that appellant took her near the bath house, down by the lake, and had intercourse with her; that this happened on September 23, 1948, and appellant then gave her some money, and when he gave her the money he told her not to tell anybody about what happened; that she then went home alone, and when she arrived home it was dark; that at a later time she met appellant by the pond in the park, and, in her own words, "He tried something"; that this happened in

the daytime, while they were sitting on one of the benches, and there were trees and shrubs around; that he tried to do the same thing that happened on the beach, but had to stop because some people were coming; that he then gave her a quarter and a half dollar; that she never had anything to do with any other man or little boys.

The testimony of Paul Owens showed that he and his wife had the custody of Lois Ann Warner, and on September 24, 1948, he signed an affidavit against appellant charging him with the rape of Lois Ann Warner; that on September 23rd she left home about 6:00 p. m., and was supposed to be back at 7:00 p. m.; that at that time it was getting dusk; that about 7:00 p. m. he and a police officer started looking for Lois Ann Warner, and found her about 7:30 p.m., and it was dark; that she had several girl friends whom she visited in the neighborhood, and that appellant goes to the same house; that she was not allowed to go to the park in the evening.

The evidence of Frank Cowgill, a police officer, shows that when he and Paul Owens stopped Lois Ann Warner on the street, they then looked for appellant, found him, and, in his presence Lois Ann Warner said he was the man, and she identified him; that he refused to answer any questions; that the police officer took some money from Lois Ann Warner which she had on her person.

There was further testimony that on several occasions appellant was seen with Lois Ann Warner, and on one of these occasions was headed toward the park; that the police were notified of this; that these meetings would take place about dusk; that prior to the trial a doctor examined Lois Ann Warner and found that the entire hymen was broken, and could have been caused by attempted intercourse or intercourse.

From the above testimony there is substantial evidence of probative value sufficient to sustain the court's finding on each material element of the crime charged. *Inman* v. *State* (1945), 223 Ind. 500, 62 N. E. 2d 627; *White* v. *State* (1941), 219 Ind. 290, 37 N. E. 2d 937; *Mack* v. *State* (1936), 210 Ind. 336, 1 N. E. 2d 595.

Appellant further contends that error was committed in the overruling of the motion for a new trial on the ground of newly discovered evidence. The affidavits setting out the newly discovered evidence on which appellant based his contention for a new trial are not in the bill of exceptions, and therefore raise no question for this court. *Garner* v. *State* (1949), 227 Ind. 503, 86 N. E. 2d 675; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915; *Butler et al.* v. *State* (1945), 223 Ind. 260, 60 N. E. 2d 137; *Bowling* v. *State* (1942), 220 Ind. 497, 44 N. E. 2d 171; *Soucie* v. *State* (1941), 218 Ind. 215, 31 N. E. 2d 1018; *Kleespies* v. *State* (1886), 106 Ind. 383, 7 N. E. 186.

See *Bolton* v. *State* (1945), 223 Ind. 308, 311, 60 N. E. 2d 742, for discussion of recantation of testimony.

There being no reversible error, the judgment is affirmed.

Emmert, C. J., and Gilkison, J., dissent.

## DISSENTING OPINION

GILKISON, J.—I am unable to agree with the majority opinion for the following reasons.

Appellant was prosecuted in the court below by affidavit charging him with the statutory rape of a girl named Lois Warner. He entered a plea of not guilty,

waived a jury and on March 9, 1949 was tried by the court, resulting in a finding and judgment of guilty, imprisonment in the Indiana State Prison not less than two nor more than twenty-one years and that he pay the costs.

The motion for new trial filed on March 30, 1949 is for the reasons: (1) That the finding is not sustained by sufficient evidence, (2) That it is contrary to law, and (3) "For newly discovered evidence material for and to defendant, which he could not, with reasonable diligence, have discovered and produced at the trial, the particulars whereof will fully appear in the affidavits of Paul Owens, Marcella Owens, and Lois Warner, attached to and made a part hereof, to which defendant here now makes reference."

With respect to the first and second reasons for the motion for new trial, the evidence most favorable to the state shows that the child was past twelve years of age. Her parents had deserted her and she was a ward of the Welfare Department of LaPorte County. That department had employed Mr. and Mrs. Paul Owens of Michigan City to room, board, care for, and send her to school. She was in grade 4-B.

The only evidence against the appellant was by this child. The statement of her evidence in the opinion is more positive than the record supports. Her testimony was to the effect that she first met defendant in April, 1948, and she met him the next time "a week and a day later" "down by the park." That she saw him about five times between the time she first saw him and the time she met him at the park, but they had not talked at any of such times. Then as before giving "yes and no" answers to leading questions asked by the prosecuting attorney, she admitted defendant asked her to meet him at the park and she met him down by the bandstand in the evening before dark. They went

down to the beach by the bath-house near the lake. After more questioning she said: "He took intercourse with me." She saw two other people there. These two other people were not called as witnesses by the state. She did not remember the date when it occurred. But when asked if it was September 23, she said "yes." She gave no reason for changing the date from "a week and a day" after she first met him in April, to September 23, more than four and a half months later. She said she went home from the park, arriving home about seven o'clock daylight saving time.

Under the leadership of the prosecuting attorney she then testified, that one day after that in the fall by accident she met the defendant down by the pond in the park. It was daytime and they sat on a bench. He fondled her, kissed her, "tried something but did not get very far," and gave her some money. She said after that "he used to walk past her house and then go follow us to school." This evidence is mentioned in the opinion as supporting the contention of the state that a crime had been committed.

However, the evidence shows that appellant was arrested about 9 o'clock P. M. September 23, 1948, by the Michigan City Police, and the intrinsic record, purporting absolute verity conclusively shows that he was arrested on the warrant issued in this case on the next day, September 24, 1948, and in default of bail was that day confined in the LaPorte County Jail; that on February 5th, 1949, more than four months later he was released on bail bond. Thus it appears the girl's entire story concerning things occurring with the defendant in the fall after September 23, 1948, is necessarily imaginary, and wholly untrue.

The only evidence that the alleged rape was ever committed came from the girl and is in the words noted above. Part of her story is completely refuted

by the physical fact conclusively shown by the intrinsic record, that the defendant was in the LaPorte County jail when the facts testified to by her must have occurred, if at all. As to the remainder of her story upon which the corpus delicti must stand or fall it must be noted that the little girl fixed the date when the alleged crime was committed as "a week and a day" after she first met the defendant in April, 1948. So it could not have been later than May 8, 1948. That she changed the date to September 23, at the suggestion of the prosecutor, indicates how unstable, wavering, imaginary, and inconstant her statements are, how readily she changes them to follow suggestions made, and how unsafe it would be to rely solely upon them in determining important affairs connected with human life and liberty. (For interesting annotation on proof of corpus delicti see 68 L. R. A. 34).

Further her story is rather effectively destroyed by the evidence of the state's witness, Dr. Saide. His evidence, after a careful professional examination of the little girl's sex organs made by him, is in substance that it is improbable the child had ever had intercourse with a man, but it could be possible. This examination was made some five months after the alleged rape. The doctor testified to a partially ruptured hymen, but said that could have been caused by many things other than sexual intercourse.

We are aware that errors of fact are for the trial court to determine, and errors of law are for the court having appellate jurisdiction. It is also true that a conviction may be sustained by the evidence of a single witness. But it is also an important rule of criminal law that there must be some substantial evidence to support each fact essential to authorize a finding of guilty. This rule places the evidence before the court

on appeal in criminal cases upon proper assignment of error and proper specifications for new trial, for the purpose of deciding, as a question of law only, whether there is substantial evidence in support of the material facts required to sustain a conviction. It is not enough that the evidence, may warrant a suspicion a mere possibility or amount to a scintilla. It must be more than seeming or imaginary. *Sylvester* v. *State* (1933), 205 Ind. 628, 631, 187 N. E. 669; *Sullivan* v. *State* (1928), 200 Ind. 43, 47, 161 N. E. 265; *Osbon* v. *State* (1938), 213 Ind. 413, 424, 13 N. E. 2d 223; *Hiner* v. *State* (1925), 196 Ind. 594, 598, 149 N. E. 168; *Slater* v. *State* (1947), 224 Ind. 627, 636, 70 N. E. 2d 425; 23 C. J. S., Criminal Law, § 910, p. 159.

We are mindful of the rule that on appeal correct action below will be presumed, until it is overcome by a showing of no substantial evidence to prove a material fact. *Luttrell* v. *State* (1932), 204 Ind. 116, 119, 183 N. E. 318. In his first and second specifications for new trial appellant relies upon a want of evidence to support the finding and that it is contrary to law. Under these specifications the sufficiency of the evidence is challenged in the trial court and in this court. *Luttrell* v. *State* (1932), 204 Ind. 116, 118, 183 N. E. 318, *supra; Trainer* v. *State* (1926), 198 Ind. 502, 510, 154 N. E. 273; *Chapman* v. *State* (1901), 157 Ind. 300, 302, 61 N. E. 670; *White* v. *State* (1894), 136 Ind. 308, 36 N. E. 274; *Stout* v. *State* (1881), 78 Ind. 492; *Luther* v. *State* (1912), 177 Ind. 619, 622, 98 N. E. 640; *Deal* v. *State* (1895), 140 Ind. 354, 359, 39 N. E. 930; *Rhoades* v. *State* (1946), 224 Ind. 569, 572, 70 N. E. 2d 27.

The presumption of innocence, Section 9-1806, Burns' 1940 Replacement, attends a defendant throughout his trial until his guilt has been established by the evi-

dence beyond a reasonable doubt. Suspicion, no matter how strong, is not sufficient to overturn this presumption. Facts, circumstances and other evidence that only give rise to a suspicion, a possibility or opportunity of guilt will not justify a verdict or finding of guilty. *Rhoades* v. *State* (1946), 224 Ind. 569, 572, 575, 70 N. E. 2d 27, *supra; Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445, 448; *Wood* v. *State* (1934), 207 Ind. 235, 238, 192 N. E. 257; *Robertson* v. *State* (1934), 207 Ind. 374, 379, 192 N. E. 887; *Patterson* v. *State* (1921), 191 Ind. 224, 228, 132 N. E. 585; *Deal* v. *State* (1894), 140 Ind. 354, 359, 39 N. E. 930; *Sullivan* v. *State* (1928), 200 Ind. 43, 47, 161 N. E. 265; *Eaton* v. *State* (1917), 186 Ind. 167, 169, 115 N. E. 329; *Rhoades* v. *State* (1949), 227 Ind. 126, 84 N. E. 2d 583.

Giving full faith and credit to all the evidence in the case it does no more than raise a shadow, trace, possibility, opportunity or suspicion of guilt. Under the authorities cited, that is not sufficient to support a conviction. .

This position is well supported by Dean Wigmore who in discussing the proposition of an alleged rape of a young girl, says:

> "A typical delinquent is a girl of corruptive environment or nymphomaniac tendency; such a girl is often the cause of injustice to an innocent man by making false charges of rape or indecent liberties;" 3 *Wigmore on Evidence* 544, § 980, Cl. 7 (3rd Ed.).
> "Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangement or abnormal instincts, partly by bad social environment, partly by temporary physiological or emotional conditions. One form taken by these complexes is that of contriving false charges of

sexual offenses by men. The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine or victim. On the surface the narration is straightforward and convincing. The real victim, however, too often in such cases is the innocent man; for the respect and sympathy naturally felt by any tribunal for a wronged female helps to give easy credit to such a plausible tale. . . .

"No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician.

"It is time that the Courts awakened to the sinister possibilities of injustice that lurk in believing such a witness without careful psychiatric scrutiny."

3 *Wigmore on Evidence* 459, 460, § 924a, (3rd Ed.).

As further noted by Dean Wigmore, in 1937-1938, the American Bar Association's Committee on the Improvement of the Law of Evidence, by a vote of 47 to 2, made a report the relevant part of which pertinent to this case is as follows:

"Psychiatric Examination of Witnesses in Sex Cases. The penalties for sex-crimes are very severe,—justly so, in most cases. But the very severity of the penalty calls for special procedural precautions to protect an innocent accused from condemnation by unreliable testimony.

"Modern psychiatry has already made its bow and been introduced properly to the criminal courts, by way of examining the mental condition of the accused. But there is also a necessity for invoking its aid for a certain type of witness in a certain class of criminal charges.

"Today it is unanimously held (and we say 'unanimously' advisedly) by experienced psychiatrists that the complainant woman in a sex offense should always be examined by competent experts to ascertain whether she suffers from some mental

or moral delusion or tendency, frequently found especially in young girls, causing distortion of the imagination in sex cases.

"The imperative nature of this measure is further emphasized by the legal fact that the penalty for intercourse with a girl under sixteen years (so-called 'statutory rape') is extremely heavy—sometimes twenty years; in one State, life imprisonment: Thus the erotic imagination of an abnormal child of attractive appearance may send an innocent man to the penitentiary for life. The warnings of the psychiatric profession, supported as they are by thousands of observed cases, should be heeded by our profession.

"We recommend that in all charges of sex offenses, the complaining witness be required to be examined before trial by competent psychiatrists for the purpose of ascertaining her probable credibility, the report to be presented in evidence."

3 *Wigmore on Evidence* 466, § 924a (3rd Ed.).

In this connection it is proper to note that among the affidavits filed with and made a part of the motion for new trial to sustain the 3rd cause therefor—newly discovered evidence—is the affidavit of the child, Lois Warner, sworn to on March 28, 1949, nineteen days after the last day of the trial, in which she specifically denied that defendant ever had intercourse with her, and gave her reasons for having testified falsely at the trial. While we may not consider this affidavit in determining the motion for new trial for the first and second reasons noted, it is in the record and is cumulative evidence of the greatly deranged mental condition of the girl. The record sufficiently shows that this condition may have been brought about or at least greatly augmented by the facts that she had been deserted by her natural parents; picked up by a state agency and made its ward; by this agency farmed out to strangers; and placed in a

strange home to live. She had been grilled some two hours by the police force before she consented to testify anything concerning the alleged crime. Added to this she had reached that period in life, usually called adolescence, with all the mysteries, vagaries, fears and hopes incident thereto and with no one in whom she had any reason to confide to advise her.

With all the evidence before us, we are driven to the conclusion that it fails, as a matter of law, to establish appellant's guilt. The finding of the court is, therefore, contrary to law. *Hutchins* v. *State* (1894), 140 Ind. 78, 84 et seq., 39 N. E. 243. See also *Boxley* v. *Commonwealth* (1874), 24 Gratt. (Va.) 649.

Supporting the third reason for new trial—newly discovered evidence,—appellant filed and presented three affidavits sworn to March 28, 1949, nineteen days after the trial, as follows:

The affidavit of Lois Warner—the person whom appellant was charged with raping, in which she says: "That the defendant in said cause, Assen Yessen, never had intercourse with her; that she told police officers that, but Officer Cowgill told her to say that he did or he would send her to a reform school. That she testified in court that he did have intercourse with her because she was afraid that she would be sent away. That she did not have intercourse with Assen Yessen or any other man."

The affidavit of Marcella Owens, who was employed to keep Lois Warner, in which she says "that Lois Warner had lived with her and her husband for seven months last past. That since the trial of appellant, Lois Warner frequently told her that the defendant, Assen Yessen, did not have intercourse with her. That the police made her say he did by threatening to send her away to a reformatory if she did not testify that the defendant did have intercourse with her."

The affidavit of Paul Owens also employed to keep Lois Warner and who signed the affidavit charging Assen Yessen with the crime of rape in this case, in which he says: That he signed the affidavit at the request of the police. That he did not know it purported to charge the defendant with the crime of rape, because the form he signed was then in blank. That Lois Warner had resided with him and his wife under the direction of the County Welfare Department for seven months last past. That on the night of September 23, 1948, members of the Michigan City police department coerced and threatened Lois Warner two hours to make her say that defendant had sexual intercourse with her. That on the day of the trial shortly before the trial began he heard Officer Cowgill ask Lois Warner what she was going to tell in court, and she told him she was going to tell the truth —that the defendant did not have intercourse with her. That Officer Cowgill then told her she would have to say that the defendant had intercourse with her, or he would give her a ride she would not come back from for life—that he would send her to a reformatory. That thereafter during the trial Officer Cowgill kept strict watch on her, thereby intimidating and keeping her in fear. That since the trial Lois Warner has constantly insisted and told affiant that the defendant did not have intercourse with her. That affiant first told defendant's attorney these facts after the trial.

On April 14, 1949, with respect to the motion for new trial the court made the following record: "Comes now the state of Indiana, by Robert T. Wilson, prosecuting attorney and comes also the defendant by Louis E. Kunkel, his counsel, and defendant's motion for new trial, heretofore filed, is now submitted to the court."

The matter remained in this situation for the consideration of the court until the 17th day of May, 1949, a period of thirty-three days, when the prosecuting attorney, over the defendant's objection filed counter-affidavits of Mildred Haag, Juanita Moser, George C. Miller and Frank Cowgill.

Mildred Haag, by her affidavit says: that she is of the LaPorte County Welfare Department. That she was present in the office of the Probation Officer when Lois *Warber* was questioned concerning her alleged rape by Assen Yessen. That she was present in the hall way of the 2d floor of the LaPorte Superior court house while Lois Warner was present and during the Assen Yessen trial. She did not hear anyone in her presence threaten, intimidate or coerce Lois Warner.

By her affidavit Juanita Moser says: That she was present at police headquarters when Lois Warner was questioned about the acts of Assen Yessen and to her knowledge and belief she was not coerced or threatened in any manner to cause her to state that she was raped or had intercourse with Assen Yessen.

By his affidavit George Miller says: That he did not at any time coerce or threaten Lois Warner to induce her to testify that Assen Yessen had intercourse with her. That any statement she made was of her own free will. No other members of the Michigan City Police Department made threats or attempted coercion, *in his presence*. (My italics).

By his affidavit Frank Cowgill says: that "he did not at any time threaten or coerce Lois Warner." That he did not say to Lois Warner "she would have to say in court that the defendant had intercourse with her or he would give her a ride she would not come back from for life and that he would send her to a reformatory. That he told her to tell the truth and did not place her in fear at any time." The record

then shows that defendant's oral motion to strike out and reject said counter-affidavits was denied, and thereupon shows as follows: "Defendant's motion for new trial is now submitted to the court, and the court, after hearing the argument of counsel, overrules said motion, to which ruling the defendant excepts."

Our statute on criminal procedure provides:

"The court shall grant a new trial to the defendant for the following causes, or any of them:
. . .

"Eighth. Newly-discovered evidence, material for defendant, which he could not, with reasonable diligence, have discovered and produced at the trial."

". . . and any such cause not disclosed in the record shall be sustained by affidavit." Section 9-1903, Burns' 1942 Replacement, Acts 1905, § 282, Ch. 169, p. 646.

The last quoted sentence above was added by the Acts of 1905, *supra*. Prior to that time the eighth cause for a motion for new trial was the same as quoted above without the addition made by the Acts 1905. See § 1842, Revised Statutes 1881; § 1911, Burns' A. S. 1894; § 1842, Horners A. S. 1901.

A statute provides:

"That every pleading, motion in writing, report, deposition or other paper, filed or offered to be filed, in any cause or proceeding, whether received by the court, refused or stricken out, shall be a part of the record from the time of such filing or offer to file; and any order or action of the court in respect to any such pleading, motion in writing, report, deposition or other paper, and every exception thereto taken by any party shall be entered by the clerk on the minutes or record of the court, and the same when so entered shall be a part of the record without any bill of exceptions.
. . .

"Provided further, That nothing herein shall be construed to prevent the bringing into or putting into the record by a proper bill of exceptions any matter, ruling or exception, *except the indictment or affidavit, the motion to quash, the pleading in answer to such indictment or affidavit, the verdict, the motion and reasons for a new trial and the final judgment.*" (My italics).

Section 9-2105, Burns' 1942 Replacement, § 289, Ch. 169, Acts 1905, p. 648, as amended by Section 1, Ch. 61, Acts 1915, p. 122, and as reenacted in Section 1, Ch. 231, Acts 1933, p. 1039.

From the foregoing it definitely appears that appellant followed the code—Section 9-1903, Burns' 1942 Replacement in preparing and presenting his motion for new trial including the filing and presenting of affidavits supporting his third reason for new trial— newly discovered evidence which he could not with reasonable diligence, have discovered and produced at the trial. As heretofore noted the record affirmatively shows that the motion for new trial with supporting affidavits as required by the statute was submitted to the court by the state and defendant on April 14, 1949. The motion for new trial remained thus submitted to the court until May 17, 1949, when the state submitted its counter-affidavits as heretofore shown. The record then shows that the motion for new trial was again submitted to the court, and arguments were presented and the motion was overruled on that date.

It thus affirmatively appears by the record that as to the third reason for new trial—newly discovered evidence—the court heard the same solely upon the affidavits presented by the defendant and the counter-affidavits presented by the state. This was entirely proper and agreeable with the code as heretofore cited.

However, prior to the amendment of 1905 this court had in one case held that to present any question as to the action of a trial court in overruling a motion for new trial on the grounds of newly discovered evidence, all the affidavits and other evidence considered by the trial court must be brought into the record by special bill of exceptions. *Kleespies* v. *State* (1886), 106 Ind. 383, 385, 7 N. E. 186. The authorities given as supporting the holding are all civil cases, based upon the civil statute. Burns' 1946 Replacement, § 2-2401 and not upon the criminal statute, Burns' 1942 Replacement, § 9-1903. Since the change made by the Acts of 1905 as noted, our court has improperly, I think, held on the authority of the Kleespies case only and cases in which no question was presented as to newly discovered evidence, and ignoring and nullifying the 1905 amendment, that the affidavits heard by the trial court on the motion for new trial because of newly discovered evidence must be brought into the record by special bill of exceptions. See *Greene* v. *State* (1945), 223 Ind. 614, 620, 621, 63 N. E. 2d 292; *Bowling* v. *State* (1942), 220 Ind. 497, 499, 44 N. E. 2d 171; *Soucie* v. *State* (1941), 218 Ind. 215, 225, 31 N. E. 2d 1018; *Alexander* v. *State* (1928), 203 Ind. 288, 289, 164 N. E. 259; *Schieber* v. *State* (1935), 209 Ind. 623, 626, 198 N. E. 315; *Perfect* v. *State* (1923), 197 Ind. 401, 409, 141 N. E. 52; *Heath* v. *State* (1910), 173 Ind. 296, 90 N. E. 310; *Headlee* v. *State* (1929), 201 Ind. 545, 552, 168 N. E. 692, 170 N. E. 433.

The holding in the Kleespies case is not based upon any logical reason but is wholly arbitrary and the cases based upon it can rise to no greater authority than it.

A similar situation was correctly disposed of by Shake, J. in *Russell* v. *Johnson* (1943), 220 Ind. 649, 657, 46 N. E. 2d 219, thus:

"A duly certified transcript of the proceedings, including the evidence, and a proper showing that the record is full and complete are all that is necessary to enable the reviewing court to discharge its responsibilities. These requirements were fully met in the instant case and we are unconcerned with the circumstance that the deposition is not contained in that part of the transcript denominated the bill of exceptions. The deposition is in the transcript; it was considered by the board; and the record before us contains all the evidence. This is sufficient."

If the Act of 1905 is followed all the evidence heard on the motion must be by affidavit. That was the plan followed in this case. But the affidavits were not brought into the record by a special bill of exceptions; they appear fully in the intrinsic record in the transcript. An easy way to dispose of this situation would be to follow the precedent based wholly on the Kleespies case, and affirm the trial court for this reason as is done in the majority opinion. However, I think the amendment of 1905 providing "and any such cause not disclosed in the record shall be sustained by affidavit" was intended to mean something. It was intended to affect the eighth statutory cause of motion for new trial in criminal cases by implementing or providing for the procedure thereon. Since that amendment became effective all the facts to sustain that cause of the motion must be presented by affidavit. One purpose of this may have been to avoid an open trial on the collateral issue raised; another may have been to make absolutely definite and certain all the facts tending to sustain or support the motion; another may have been to do away with the necessity of presenting the affidavits by a special bill of exceptions, and there may be others. While the statute does not provide for counter-affidavits, the state was per-

mitted to file counter-affidavits in this case. So far as I can find this always has been considered a proper practice and I think it was proper in this case. *Hire* v. *State* (1896), 144 Ind. 359, 43 N. E. 312. When both parties present their facts by affidavit, and the material facts with respect to the issue involved are undisputed, a question of law only is presented and is to be determined as such by the court. For holdings in similar cases see *Atkinson* v. *State* (1920), 190 Ind. 1, 6, 128 N. E. 433; *Dobosky* v. *State* (1915), 183 Ind. 488, 490, 109 N. E. 742; *Sanders* v. *State* (1882), 85 Ind. 318, 333; *Kuhn* v. *State* (1944), 222 Ind. 179, 182, 183, 52 N. E. 2d 491; *Morse* v. *The State* (1886), 108 Ind. 599, 9 N. E. 455; *Pittsburg, etc. R. Co.* v. *Marable* (1919), 189 Ind. 278, 285, 126 N. E. 849.

In *Kuhn* v. *State* (1944), 222 Ind. 179, *supra*, on page 183 Richman, J. correctly explained the applicable law thus:

"Frequently an issue of fact is submitted and decided upon verified complaints and answers or upon affidavits and counter-affidavits. . . . *When so submitted uncontroverted facts appearing in the verified pleadings are treated as true* and the trier resolves conflicts as he would in considering oral testimony." (My italics).

Of course, if the evidence as to the material facts is conflicting this court will not disturb the conclusion reached by the trial court unless an abuse of discretion is shown. *Rector* v. *State* (1934), 211 Ind. 483, 487, 7 N. E. 2d 794; *Cooper* v. *State* (1889), 120 Ind. 377, 383, 22 N. E. 320.

I think the trial court properly considered the motion for new trial, as to alleged newly discovered evidence, by considering only the evidence introduced at the trial, the sustaining affidavits produced by appellant and the counter-affidavits produced by the

state, and that, as parts of the motion for new trial, these affidavits were properly made a part of the intrinsic record of the case agreeable with Section 9-2105 Burns' 1942 Replacement, *supra. Hines et al.* v. *Driver* (1885), 100 Ind. 315, 316 et seq.; *Bruce* v. *State* (1927), 199 Ind. 489, 497, 158 N. E. 480. Since this was the procedure taken by the trial court, and the record indicates that both the defendant and the State accepted it as the proper way to determine the issue presented, it is the duty of this court to consider the motion for new trial on the same basis. *State ex rel. Cline et al.* v. *Schricker, Governor et al.* (1949), 228 Ind. 41, 88 N. E. 2d 746, 747, and authorities there cited. It would be a vain repetition after such a hearing below to require the affidavits to be brought into the record by special bill of exceptions too, in order to have the same considered by this court.

A careful consideration of all the evidence in the case together with the affidavits sustaining the motion for new trial and the counter-affidavits, leaves the affidavit of Lois Warner in which she completely retracts her evidence at the trial, that appellant "took intercourse" with her, wholly uncontradicted. Her affidavit is agreeable with the affidavits of her caretaker and in no way contradicts the evidence of Dr. Robert A. Saide who made a physical examination of the child and testified fully concerning the same at the trial, but on the contrary is agreeable with the doctor's evidence, and corroborative thereof. Her affidavit as to the non-commission of the alleged crime is not controverted by any affidavit filed by the state.

Since the only evidence in the record that the crime charged was ever committed was the evidence of Lois Warner, her complete retraction thereof leaves the corpus delicti wholly unproved and non-existent. 23 C. J. S., Criminal Law, § 916, p. 181; 14 Am. Jur.,

Criminal Law, § 6, p. 758; *Hawkins* v. *State* (1941), 219 Ind. 116, 129, 37 N. E. 2d 79; *Hunt* v. *State* (1939), 216 Ind. 171, 178, 23 N. E. 2d 681; *Parker* v. *State* (1949), 228 Ind. 1, 88 N. E. 2d 556, 89 N. E. 2d 442.

For instructive annotation see 68 L. R. A. 34.

With this situation before it, only a question of law was presented to the trial court on this cause of the motion for new trial, and the appeal brings this question of law directly before this court for review. The affidavits conclusively show that the crime of which appellant was convicted, was never committed. Of course appellant could not be guilty of an offense that was never committed. Overruling the motion for new trial was not only an abuse of discretion, but was an error of law. *Partlow* v. *State* (1924), 195 Ind. 164, 172, 144 N. E. 661, and authorities cited; *Foreman* v. *State* (1932), 203 Ind. 324, 330, 180 N. E. 291; *Dennis* v. *State* (1885), 103 Ind. 142, 143, 2 N. E. 349; *Gavalis* v. *State* (1922), 192 Ind. 42, 49, 135 N. E. 147; *Harper* v. *State* (1916), 185 Ind. 322, 114 N. E. 4; *Boxley* v. *Commonwealth* (1874), 24 Gratt. (Va.) 649, *supra.*

The counter-affidavits filed by the state merely tend to contradict the reasons, given by the child, Lois Warner, and her caretaker, for the false evidence she gave at the trial. They in no way contradict or modify her clear statement that the crime charged was not committed.

It might be said this situation presents a matter for executive clemency, and we would agree to the statement but for the fact that appellant's attorney became conversant with the facts in time and properly brought them before the trial court for correction. We have no right intentionally to be derelict in the performance of our duty, nor to carelessly shift it to other authorities no matter how conscientious and capable they may be.

It is to the credit of the erring child that she speedily and courageously took the only course open to her to correct her frightful error.

The judgment should be reversed with instruction to sustain appellant's motion for new trial.

## DISSENTING OPINION

EMMERT, C. J.—My brother Gilkison has ably stated the record as well as the legal principles involved, and I agree with his reasoning. However, the importance of the questions presented is of such magnitude that further notice should be brought to the attention of the profession.

The record discloses the prosecuting witness was in fact a neglected, delinquent and incorrigible child of twelve years, and a ward of the County Department of Public Welfare. Appellant was sixty years of age, born in Syria, and was so unfamiliar with the English language that the trial judge as well as counsel had great difficulty in understanding his testimony. Among other defenses, he tried to convey to the court his contention that he was impotent. His unique testimony on this subject to me would have been convincing as a trial judge, but I realize the trial judge had the right to determine his credibility as a witness, and that we are not permitted to review for this. But I would not affirm the action of the trial court in overruling the motion for a new trial, nor can I condone or approve the particularly unenlightened position the state has taken since the time the motion for new trial was filed.

It would not be necessary in this appeal to decide that in all cases where a female adolescent child makes a charge that a man has committed a sexual offense upon her, that a psychiatric examination should be

had. There may be cases where corroborative evidence leaves no doubt that the crime was committed, but this is not such a case. The state was well advised before the prosecution was instituted that its only witness whose testimony could justify conviction was not a normal child.

She was within the control of the state at all times. No doctor examined her until months after the alleged offense. Ordinary prudence on the part of the state would require that she be given a physical examination by a competent physician as soon as her story of the offense was made known. Instead of that she was examined a short time before trial, and told several other witnesses that the doctor stated she had not been ravished. The testimony of the physician who did make the examination was based on possibility and not probability. He never attempted any psychiatric examination to determine if she was telling a creditable story. There was no reason at any time why the state, with all of its power and authority over one of its wards, could not have had her examined by a competent psychiatrist who would be able to correctly advise the prosecuting attorney and the court whether she was a truthful child, or one of the many who are all too prone to tell libidinous stories of sexual events which are only a figment of the imagination.

If the incidence of such occurrences and resulting miscarriages of justice is so high that the American Bar Association has taken official notice, and such an eminent authority as Dean Wigmore advocates psychiatric examination of the alleged victim in order to protect accused persons from being imprisoned on such perjured tales, it is imperative that the prosecuting officials, the trial judges, and courts of review take cognizance of the grave dangers involved in any such prosecutions. If it was important that she be

given a psychiatric examination before testifying, it was even more important that the trial court should have had the benefit of the evidence of a competent psychiatrist after she had repudiated all of her testimony implicating appellant. The state ought not be permitted to rely on the presumption of the regularity and validity of a judgment, and take no steps to enlighten the trial court, or put this court in a position to have more facts in the record on appeal.

At the time this appeal was argued the state contended that the affidavit of retraction by the prosecuting witness was false, yet at the same time the state admitted that no steps whatever had been taken to determine how she happened to execute such affidavit. If this affidavit was perjured, it would hardly be common sense to suppose that she committed perjury without the aid and advice of someone else. If it was perjured, it was suborned perjury. The state should be vigilant to discover and punish for such an offense, but it was not in this case. The powerful arm of the grand jury should have been used to investigate and discover who suborned this perjury, and the guilty person or persons should have been indicted for subornation of perjury, even before the motion for new trial was ruled upon. Nor did the state after her retraction bring her into open court for examination under oath concerning her affidavit or her testimony at the trial. The fact that the state did nothing to determine who caused the execution of this affidavit is consistent only with the position that the affidavit of retraction stated the truth. The state's inaction speaks louder than its words.

It should be evident that no civilized judicial system should permit to stand any judgment of conviction which is wholly based upon perjured testimony. We are not dealing with a case of impeached testimony

or retraction of corroborative evidence. We have here an exceptional case where the record discloses that the trial court did not and could not know whether or not an innocent man was convicted of a serious felony. This court has previously held that a conviction which could not stand without perjured evidence, should be vacated. *Dennis* v. *State* (1885), 103 Ind. 142, 2 N. E. 349; *Partlow* v. *State* (1924), 195 Ind. 164, 144 N. E. 661; *Davis* v. *State* (1928), 200 Ind. 88, 161 N. E. 375. The holding in *Bolton* v. *State* (1945), 223 Ind. 308, 60 N. E. 2d 742, that the inquiry in cases of retracted testimony is directed to the determination of which time the witness told the truth, and that the discretion of the trial court in ruling on such inquiry should not be reviewed unless a clear abuse is manifest, is not in conflict with the position of this dissent. Here there was a gross abuse of discretion.

The rule is well settled that it is a denial of due process under the Fourteenth Amendment for a defendant to be convicted in a state court upon perjured testimony, when that fact is known to the state. *Mooney* v. *Holohan* (1935), 294 U. S. 103, 79 L. Ed. 791, 55 S. Ct. 340, 98 A. L. R. 406; *White* v. *Ragen* (1945), 324 U. S. 760, 89 L. Ed. 1348, 65 S. Ct. 978; *Pyle* v. *Kansas* (1942), 317 U. S. 213, 87 L. Ed. 214, 63 S. Ct. 177. The element of knowledge to the state makes it state action, which is the agency prohibited by the Fourteenth Amendment. The holding of these cases necessarily is that a conviction based upon such perjured testimony is a want of due process, even though it must be done by the state to make it subject to review by the federal courts. Nor can I escape the conclusion that such a conviction is a denial of due process in any event. The fact that in this appeal the trial court had a right to find that the state was not advised of the perjury until after conviction should

have no weight in the administration of justice. It would be a shocking result for this court to hold that a conviction should stand based upon perjured evidence when the state discovered it after conviction, but that if the perjury was known before conviction, the conviction should be reversed.

As in many other subjects of the law, the decisions of other jurisdictions are not in accord on reversing judgments based in whole or in part on perjured testimony. Those which grant relief are based upon every consideration of principle. See *Pettine* v. *Territory of New Mexico* (1912), 201 Fed. 489; *Harrison* v. *United States* (1925), 7 F. 2d 259; *Martin* v. *United States* (1927), 17 F. 2d 973, Cert. denied 275 U. S. 527, 48 S. Ct. 20, 72 L. Ed. 408; *Roath* v. *State* (1932), 185 Ark. 1039, 50 S. W. 2d 985; *Sutton* v. *State* (1938), 197 Ark. 686, 122 S. W. 2d 617; *Doss* v. *State* (1941), 203 Ark. 407, 157 S. W. 2d 499; *State* v. *Zeilinger* (1938), 147 Kan. 707, 78 P. 2d 845; *People* v. *Heinen* (1921), 300 Ill. 498, 133 N. E. 237; *People* v. *Busch* (1923), 228 Ill. App. 11; *State* v. *Myers* (1923), 154 Minn. 242, 191 N. W. 597; *Martin* v. *State* (1926), 34 Okla. Cr. 274, 246 Pac. 647; *McConnell* v. *State* (1918), 82 Tex. Cr. R. 634, 200 S. W. 842; *Green* v. *State* (1923), 94 Tex. Cr. R. 637, 252 S. W. 499; *Wadkins* v. *State* (1925), 102 Tex. Cr. R. 292, 277 S. W. 684; *Altman* v. *State* (1932), 121 Tex. Cr. R. 263, 51 S. W. 2d 359; *Douglas* v. *State* (1932), 122 Tex. Cr. R. 171, 54 S. W. 2d 515; *Schwartz* v. *State* (1941), 141 Tex. Cr. R. 456, 149 S. W. 2d 96; *Powell* v. *Commonwealth* (1922), 133 Va. 741, 112 S. E. 657, 33 A. L. R. 541; *Hodnett* v. *City of Danville* (1929), 152 Va. 955, 146 S. E. 281; *State* v. *Elliott* (1940), 6 Wash. 2d 393, 107 P. 2d 927.

The proviso contained in § 9-2105, Burns' 1942 Replacement, that "every pleading, motion in writing,

report, deposition *or other paper,* filed or offered to be filed, in any cause or proceeding, whether received by the court, refused or stricken out, *shall be a part of the record* from the time of such filing or offer to file", (italics supplied), is certainly broad enough to include affidavits filed as a part of and in support of a motion for new trial. My brother Gilkison has carefully stated the history of the erroneous decisions holding that such affidavits must be made a part of the record by special bill of exceptions. This court was not constituted to perpetuate its own error, nor to indulge in judicial legislation by the nullification of the plain provisions of statutes. The special bill of exceptions rule is seldom followed in practice, and time after time we have presented here records properly certified by the clerk showing affidavits filed as a part of a motion for new trial, which are not brought into the record by special bill of exceptions. In not a single case brought to my attention has it ever been contended by the state that the record does not speak the truth, yet time after time this court has refused to see what it knows to be the truth, and so avoids passing on the merits of issues affecting the liberties of some individual who may be unfortunate enough to have counsel not familiar with this nonsensical rule.

What possible injury could society suffer by granting a new trial so that a full investigation may be had of the prosecuting witness? If her testimony at the trial was the truth, a psychiatric examination would have established its credibility. If her testimony at the trial was true, the one or ones who procured her affidavit of retraction should be properly charged and prosecuted. But if appellant has been convicted upon her perjured testimony, he should be set at liberty. It is not a matter of executive clemency when the courts

have the power and the duty to grant relief from such unjust convictions, for the constitution commands us to administer justice "completely, and without denial." NOTE.—Reported in 92 N. E. 2d 621.