EVERETT *v.* STATE OF INDIANA.
[No. 26,212.    Filed April 9, 1935.]

*C. L. Walters* and *H. M. Devolis,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *William E. Bussell,* Deputy Attorney-General, for appellee.

TREMAIN, J.—The appellant was tried and convicted upon an indictment charging him, in a single count, with murder in the first degree. There was a plea of "not guilty" and self-defense. Judgment was rendered upon the verdict that he be imprisoned for life in the state's prison. His motion for a new trial was overruled and this ruling is assigned as error. It is shown by the evidence that on the evening of June 29, 1931, the appellant was engaged in baiting a trot line in St. Mary's river on the north side of the town of Pleasant Mills in Adams county; that he was in a boat and carried with him his bait and a small 25-caliber revolver, which he carried for the purpose of hunting; that appellant was a batchelor about fifty-four years of age and did not maintain a home; that at times he resided with relatives and during the summer it appears that he lived along the river and slept on the ground part of the time and at other times slept in a barn near the river; that he attended school six or seven years when a boy and reached the fourth grade; that he worked by the day for farmers and did odd jobs, but it appears that during the fishing season he spent most of his time along the river; that he had resided in that community all his life; that he was never arrested or charged with the commission of any crime until this occasion.

While appellant was engaged in baiting his trot line and about seven o'clock in the evening the decedent, Doras Werling, age twenty-seven, and his two brothers-in-law, James Franklin Halberstadt, Jr., age nineteen,

and Thomas Halberstadt, age sixteen, together with another young boy, came to the river to go in swimming. At that time the appellant was across the river from these men, a distance of 250 feet; that the small town of Pleasant Mills is on the south side of the river, which at that point runs from the east to the west; that the appellant returned from the north side of the river to the south side near where the decedent and boys were located, and near the building where appellant kept his supplies; that he anchored his boat, and at that time trouble arose between them. The Halberstadt boys testified that they had gone to the river to go in swimming and had thrown a stone into the water to test its depth, and that the decedent was sitting on a log some twelve or fifteen feet from where the appellant anchored his boat. They testified that the appellant started an argument with them as to why they were swimming in his fishing territory and they claim that appellant fired one shot at the decedent while he sat upon the log; that after that shot was fired the decedent lunged onto the appellant; that at the same time the Halberstadt boys attacked him and the three of them were on appellant, who was lying upon his back, when a second shot was fired; that upon the firing of the second shot the decedent fell off appellant and died within a short time, never having spoken a word after he received the injury.

The appellant testified that when he anchored his boat he reached under the seat and got his bait can and revolver to carry them back to a barn which stood a short distance from the river; that decedent and the two Halberstadt boys immediately attacked him; that they knocked him down and beat him until he was almost unconscious; that he had the revolver in his right hand when he was attacked by the decedent and the Halberstadts; that he always held the revolver in his left

hand when firing it; that he did not know how the gun was discharged because the three men were on him and beating him at the time and his eyes were filled with blood and he could not see; and that he was greatly frightened, and believed that he was in danger of great bodily harm.

It appears that the young boy who accompanied the decedent and the Halberstadt boys immediately ran away when the fight started. However, an eye witness stood on a hill about seventy-five feet south of where the fight occurred. He testified that he heard the loud talk, but did not understand all that was said; that he saw appellant anchor his boat and walk along the bank near the decedent and that the decedent and the two Halberstadt boys attacked the appellant and knocked him to the ground; that they were the aggressors; that the three were on the appellant before any shots were fired; that two shots were fired about one-half minute apart; that when the second shot was fired he saw the decedent fall off the body of the appellant and that he died without speaking. All the evidence shows that the appellant was severely beaten and bruised about the face and head and that one bullet had entered his right forearm near the wrist and gone out near the elbow; and a bullet passed through the knee of the decedent; another bullet struck the decedent on the right side about two inches below the nipple and ranged to the left, passing through his heart. It is clear from the evidence that but two shots were fired and that the three wounds above described were inflicted. Substantial evidence indicates that the shots were fired while all the men were on the ground in the fight.

It is further established by the evidence that the decedent and the appellant were unacquainted. The evidence does not show that there had ever been any

trouble between appellant and the Halberstadts prior
to this occasion. There is no evidence that prior to this
he had entertained any ideas or had done any act to in-
dicate that he anticipated trouble on the evening of the
killing. The evidence indicates that the attack was
made by the decedent and the two boys upon the appel-
lant; that they were the aggressors and precipitated the
fight.

The first assignment of error relied upon by appellant
for reversal of this cause is that the verdict and judg-
ment are not sustained by sufficient evidence. Since
the indictment charges first degree murder, it becomes
the duty of the court to determine whether or not first
degree murder can be predicated upon the facts as above
recited.

The burden was upon the state to establish beyond
a reasonable doubt that the appellant purposely and
with premeditated malice killed the decedent.
Malice may be inferred from the intentional use
of a deadly weapon in such manner as is likely
to cause death, but this inference may be rebutted. Pre-
meditated malice is the very essence of the crime with
which the appellant was charged and convicted. This
question comes to this court confirmed by the jury's con-
viction and approved by the trial court. That conclu-
sion of the jury and the trial court must be taken to
mean that, beyond a reasonable doubt, the appellant de-
termined in his own mind, first, to take the life of the
decedent, and, second, that he had the opportunity for
premeditation; that time for reflection intervened be-
tween the thought to kill and the actual perpetration
of the act of taking life. In order that there may be
such premeditated malice as will make a killing murder
in the first degree the thought of taking life must have
been consciously conceived in the mind, the conception

must have been meditated upon, and a deliberate determination formed to do the act. Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneous as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree. But as it is the very essence of the crime that there should have been time and opportunity for premeditation after the mind had consciously formed the design to take life, it follows as a necessary corollary that there must have been the mental capacity to think deliberately upon, and determine rationally in respect to the nature and consequences of the act which follows.

The verdict returned by the jury is unusual in its form and may indicate that there was a serious doubt in the minds of the jurors at the time the verdict was returned. It is as follows:

"We, the jury, find the defendant Joseph Everett guilty as charged and we find his age to be fifty-four (54) years.

"We the jury and each of us feel that the defendant should not suffer the extreme penalty and we plead for leniency as would be within the law, subject to parole."

Each of the twelve jurors signed the verdict.

The last paragraph of the verdict indicates that the jury had in mind that appellant should have his freedom when it was recommended that he be paroled. Considering the evidence and the verdict of the jury there can be little doubt as to what the jury would have done had there been other counts in the indictment charging a lesser degree of homicide.

Upon the whole the evidence is not satisfactory and

some doubt might be entertained as to its sufficiency to establish murder in the first degree. But recognizing the rule that this court will not weigh the evidence, the cause cannot be reversed on account of insufficient evidence.

Upon the trial the clerk of the circuit court of Adams county was called as a witness in behalf of the state, and over the objection of the appellant was permitted to testify that she had examined the record in the clerk's office of permits issued to persons to carry pistols and revolvers; that such examination disclosed that the appellant had not been granted such permit.

The court instructed the jury fully concerning the provisions of the statute with reference to the regulation, control, possession, sale and use of pistols and revolvers and detailed to the jury all the proceedings required to procure such permit. Following this instruction the court then instructed the jury:

"You are further instructed that it is the law in the State of Indiana that in the trial of a person charged with committing or attempting to commit a felony against the person or property of another while armed with a pistol or revolver, without having a permit to carry such firearms as hereinbefore stated and provided, the fact that such person was so armed shall be prima facie evidence of his intent to commit such felony."

As heretofore pointed out the appellant relied upon self-defense as a ground for his acquittal. If he was justified in the use of a revolver, it would not matter whether he had or did not have a permit to carry it. Even if the defense of self-defense had not been interposed by appellant his having or not having a permit to carry the revolver would neither add to nor detract from his intent to commit a felony. For a full and complete discussion of this question see *Powers* v. *State*

(1933), 204 Ind. 472, 184 N. E. 549. The court should not have permitted the clerk of the county to testify that a permit had not been granted to appellant; nor should the court have given the instructions above referred to. The fact that appellant carried the revolver without a permit issued to him could not be prima facie evidence of his intent to commit the homicide. The failure to have the permit did not add anything to his crime for the reason that it had no relation thereto. If appellant killed the decedent unlawfully, feloniously and purposely, and with premeditated malice, it mattered not whether the permit had or had not been granted. By permitting the evidence upon that subject to be given to the jury and by giving the instructions on the subject, the court committed reversible error.

It is established by the evidence that the decedent, Doras Werling, and his two brothers-in-law, James Franklin Halberstadt and Thomas Halberstadt, went to the river together on the evening of the homicide and the three engaged in a combat with the appellant. The Halberstadts admitted that they took part in the fight; that they beat the appellant in the face with their fists. Each of the Halberstadts was called as a witness upon behalf of the state and testified that they went to the river for the purpose of going in swimming and with no intention of having trouble with appellant. On cross-examination numerous questions were put to them by counsel for the defense concerning statements made out of court, both before and after the conflict. Objection by the state was sustained to each question. As an illustration, James Franklin Halberstadt was asked, upon cross-examination, the following questions:

"I will ask if you didn't at the time and place mentioned in the previous question say that you were going to get your brother and yourself and

your brother-in-law Doras and that you were going to go down and beat Joe Everett up?"

"I will ask you Mr. Halberstadt if on the morning of the day of the trouble you didn't, in a conversation with a man by the name of Roy Burkholder, say to him that you were going down and beat up Joe Everett?"

"I will ask you, Mr. Halberstadt, if within a few days after this fight down there if you didn't say to Harry Daniels at Pleasant Mills, in his garage, that you and Doras Werling and your brother had gone down to clean up on Joe Everett and that you were sorry you hadn't killed him?"

Similar questions were put to Thomas Halberstadt upon cross-examination, one of which is as follows:

"And I will ask you if in that same conversation that Harry Daniels said, 'I wouldn't do that, you will get in trouble,' and if you did not answer, 'We're going anyway, to hell with the trouble.'"

Each of these questions was proper and the court should have required the witnesses to answer for at least two reasons, (1) for the purpose of laying the basis for impeachment, and (2) each of the witnesses was appellant's antagonist, engaged in the fight at the time of the homicide, and it was proper to put in evidence any facts which would tend to show bias, prejudice or ill will on the part of the witnesses toward the appellant. The appellant was entitled to prove that the Halberstadts and the decedent went to the river on the evening in question for the purpose of having trouble with appellant and to show this, he was entitled to have answers to the questions propounded, and in event of a denial by the witnesses to call the parties to whom the alleged statements had been made for the purpose of impeaching the witnesses. These were proper matters which should have gone to the jury. After the court sustained the state's objection to all of such questions the defense called the parties to whom the alleged statements were supposed to have been made and propounded

to them questions concerning what the Halberstadts had said to them. The state's objection was sustained to each question. The appellant was deprived entirely of making proof as to what these antagonists had stated relative to their purpose of going to the river on the evening in question. It was error for the court to exclude this evidence.

Considering the unsatisfactory state of the evidence, it can not be doubted that the court erred in permitting the clerk of the court to testify that a permit to carry a pistol had not been granted to the appellant and by giving the instructions upon that subject; and also that the court erred in sustaining the state's objection to the questions propounded to the Halberstadts upon cross-examination. Therefore the judgment of the lower court is reversed with instructions to sustain appellant's motion for a new trial.

The clerk of this court will issue the proper order for the return of the prisoner to the custody of the sheriff of Adams county.