### WARREN *v.* STATE OF INDIANA.

[No. 30,038. Filed February 19, 1963.]

510

*William C. Erbecker* and *Richard Brunt*, both of Indianapolis, for appellant.

*Edwin. K. Steers,* Attorney. General and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

LANDIS, J.—Appellant was indicted for the first degree murder of his wife and after a trial by jury was convicted of murder in the second degree. He

was sentenced to the Indiana State Prison for life and he appeals from the judgment.

Appellant first contends the verdict is not sustained by sufficient evidence. The evidence favorable to appellee is as follows:

Bennie Lee Warren, the 14 year old son of appellant and deceased, testified he observed appellant shoot appellant's wife three times on the date of her death, the third shot coming after his wife had fallen to the floor. Larry Warren, the 11 year old son of the parties, stated appellant took his gun from his pocket and shot his mother three times and that his mother fell. Robert Warren, the 9 year old son, testified that after he heard one or two shots, he went into the kitchen where he saw his father shoot his mother while she was on the floor.

Appellant requested his 14 year old son to call the police, and officer Loeblin testified appellant stated to him shortly thereafter:

"... 'This is the gun I shot her with [referring to his wife]." And, "'I shot her and would do it again.'"

Detective Higgins testified that appellant told him at the scene of the shooting that:

"... '[his] wife was cheating on ... [him] and ... [he] shot her and killed her.'"

Witness Willola Gray testified that in the latter part of July, 1959, appellant came to Mrs. Gray's home looking for deceased and said:

"... 'When I find that bitch I am going to kill her' ...."

Appellant's written admission or confession introduced in evidence said in part:

"I left them [six of my children] at church. Then I went to the home of some people named Gray. The lady worked with my wife. I called my wife from their house because we had planned to have a picnic. ... She told me that I didn't need to come on in. ... I went on home. ... She told me she wasn't going to clean up and 'You just go one way and I'll go the other.' ... I told her there was enough disturbing us now .... She told me she would get the police and put me out. I told her, 'If that's the way you feel I'll just go and get matters over with now.' She said 'Just get what you want to.' I just walked into a bedroom off the kitchen and got a .25 Cal. automatic that was hid under the bed. I had bought the gun about three weeks ago, I bought it at a gun shop east of Willard Park on East Washington Street. The gun is registered in my name. I came out of the bedroom with the gun. She was standing in the corner of the kitchen about eight feet away. I just started shooting. She fell on the floor and I walked on out of the house. I waited in the front yard till the police came. I handed the automatic to a uniform policeman."

The record is replete with evidence of appellant's anger displayed toward his wife and of instances where appellant struck his wife.

The statute defining second degree murder is Burns' §10-3404 (1956 Repl.), providing as follows:

"Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life." Acts 1905, ch. 169, §350, p. 584.

It is difficult to see how the foregoing evidence could be considered insufficient to prove the purposeful and malicious killing by appellant of his wife as charged in the indictment.

It is further well settled that intent and purpose to kill may be inferred from the deliberate use of

a deadly weapon in a manner calculated to produce death. *Schlegel* v. *State* (1958), 238 Ind. 374, 377, 150 N. E. 2d 563, 564; *Barker* v. *State* (1958), 238 Ind. 271, 279, 150 N. E. 2d 680, 684.

Appellant has further contended however that the facts bring this case within the crime of manslaughter in that there was provocation caused by sudden heat.

Appellant has cited his testimony as to the words spoken by deceased to appellant prior to the shooting in which she allegedly stated:

". . . 'We ain't going on no picnic [because], ... the clothes I bought Rippy, they look better than yours do. ... Get on out before I call the police. ... You dumb son-of-a-bitch, I got you in the gutter and I am going to keep you there.' ..."

It is a settled rule of law that mere words do not constitute provocation which will reduce an unlawful killing from murder to manslaughter. *Boyle* v. *The State* (1886), 105 Ind. 469, 480, 5 N. E. 203, 210, 55 Am. Rep. 218.

The infidelity of appellant's wife is stated by appellant in this case to have amounted to sufficient provocation.

Appellant's testimony indicates he realized his wife was running around with another man in 1955, that two months after decedent's last child was born and after appellant found one John Rippy in his house with his wife and child, deceased told appellant the last two children were not his. One morning in early August, 1959, appellant discovered at 4:00 a.m. that his wife had not been home that night. He noticed said Rippy's auto outside the Foster

Hotel Annex and at 6:00 a.m. appellant's wife and Rippy left the hotel together in Rippy's auto. Appellant crashed his auto into Rippy's car in an effort to stop them. August 8, 1959, appellant purchased the gun he used to kill his wife. Appellant stated he talked to his wife concerning her carrying on with Rippy approximately once a week.

Genalee Jones, mother of deceased, testified appellant told her he realized deceased was carrying on with another man and if he had caught her he would have killed her. Appellant stated his lawyer and the police told him if he had killed her he would not have been arrested.

This evidence shows conclusively that any sudden heat brought about by any provocation had more than ample time to cool.

In a somewhat similar case wherein the accused had days to meditate upon the commission of a homicide after discovering the infidelity of his betrothed, this Court said: *Henning* v. *The State* (1886), 106 Ind. 386, 401, 6 N. E. 803, 813, 55 Am. Rep. 756.

"... If upon first discovering her infidelity he slays her, then, possibly, the killing might be reduced to manslaughter, but it is nothing less than murder, when after ample time for passion to subside, he deliberately kills her. ..."

It is readily apparent that there was evidence with reasonable inferences of substantial and probative value to prove the crime of second degree murder as defined in the statute and as against appellant's contention that there was provocation caused by sudden heat permitting only a conviction for manslaughter.

Appellant next contends that under appellant's plea of insanity in this case he did not have sufficient will power to control his impulse to kill and that the State failed to prove to the contrary beyond a reasonable doubt.

In this case appellant introduced evidence in support of his plea of insanity and the burden was on the State in the trial court to prove that accused was able to know and comprehend the nature and consequences of his act. This includes knowledge on his part that the act was wrong for if the accused is unable to distinguish right from wrong he would not know the nature of his act. See: *Flowers* v. *State* (1956), 236 Ind. 151, 160, 139 N. E. 2d 185, 191.

In determining the effect of irresistible impulse it is the settled law of this state that a person may have sufficient mental capacity to know right from wrong and be able to understand the nature and consequences of his act and yet not be responsible for his actions, if his will power is so impaired by a diseased mind that he cannot resist an impulse to commit the criminal act. In other words, if the lack of will power is the result of a diseased state of mind, there is mental unsoundness in the eyes of the law; but if the will is simply overborne by ungoverned passion, there may be criminal responsibility. See: *Plake* v. *The State* (1890), 121 Ind. 433, 435, 23 N. E. 273, 16 Am. St. Rep. 408, *Flowers* v. *State, supra.*

This Court on appeal must look to the evidence most favorable to appellee (the State) to determine whether or not appellant had a diseased or insane mind at the time the deceased was killed.

Drs. DeWitt W. Brown and E. W. Mericle of Indianapolis, well known neuro-psychiatrists were appointed by the court to examine appellant. Dr. Brown testified there was no evidence of mental illness or psychosis on the part of appellant at the time of the crime. Dr. Mericle stated "We felt he [appellant] was sane," and that he found no evidence of mental disease.

On cross-examination Dr. Brown was asked the following question:

> "Doctor, do you have any opinion as to whether or not the defendant could have been suffering from temporary mental disorder at the time of the shooting, so as to be unable to resist his impulse to shoot?"

Dr. Brown's answer was as follows:

> "He did not resist the impulse to shoot, but I found no evidence of mental disorder, unless one can consider severe anger and rage a mental disorder."

Subsequently, Dr. Brown stated as follows:

> "His reasoning was impaired the same way anybody's reasoning is impaired when they are very, very angry."

In the case of *Sanders* v. *The State* (1884), 94 Ind. 147, 148, this Court held as follows:

> " ... ungovernable passion does not constitute insanity. It is the duty of one whose will power is not impaired by disease to govern and control his passions, and if he yields to passion and slays another, he must pay the penalty prescribed by law...."

A significant opinion was expressed by Dr. Mericle during the following cross-examination of him by appellant's attorney, viz:

"Q. Would you say that the acts of the defendant's wife and her infidelity, if such were a fact, would cause such extreme stress and emotional trauma that she exerted on the defendant that he was worn to a point of emotional fatigue and exhaustion where his judgment and mental equilibrium was [sic] so impaired he could not be considered responsible for the shooting?

"A. No, I can't say that.

"Q. Why, Doctor?

"A. I don't believe it."

There was also evidence from appellant's first cousin and his wife that they considered appellant a normal man, as well as testimony from witnesses who observed appellant shortly before and after the shooting to the effect that he was calm, spoke clearly and unconcerned and did not act irrational or strange.

We are unable to conclude from the foregoing evidence favorable to the State that substantial evidence was not introduced to establish the sanity of appellant or that he possessed sufficient will power to make him responsible for his acts.

Contrary to appellant's various contentions as to the alleged insufficiency of the evidence to sustain the verdict of the jury, the evidence with all reasonable inferences is sufficient to sustain the jury's verdict convicting appellant of second degree murder.

Similarly, it cannot be contended with reason that the verdict is contrary to law for it is only when the evidence is without conflict and leads to but one reasonable conclusion, that the verdict will be disturbed as being contrary to law. See: *Bowens* v. *State* (1953), 231 Ind. 559, 563, 109 N. E. 2d 91, 93.

Appellant's contention that the trial court erred in overruling his motion for a directed verdict of not guilty at the close of the State's evidence is not well taken as any such error as may have been committed was waived by the appellant's subsequent introduction of evidence in his defense. *Swift* v. *State* (1961), 242 Ind. 87, 91, 176 N. E. 2d 117, 119.

Appellant next contends that the trial court erred in overruling his motion for a directed verdict at the conclusion of all the evidence. This contention is not meritorious as a peremptory instruction of acquittal in a criminal case is only proper where there is a total absence of probative evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference which is in favor of the accused. Here the determination of the issue involved the weight of the evidence and the credibility of witnesses and it would have been an invasion of the province of the jury for the court to direct a verdict. *State* v. *Patsel* (1960), 240 Ind. 240, 245, 163 N. E. 2d 602, 604.

The remaining contentions of appellant relate to the giving or refusing of instructions.

The first such contention is that the court erred in refusing to give appellant's tendered instruction 13 relative to the jury's duty to consider under a plea of insanity the evidence as to appellant's mental condition in determining whether he had such a *defect. or reason* as not to know the quality of his act. It is apparent that this tendered instruction was carelessly drafted as it should obviously have read "defect of reason" instead of "defect or reason." Whether appellant had a "defect or reason" not to know the quality of his act encompassed matters far broader than the issue of insanity or appellant's

mental condition and the instruction was therefore improper, and the court correctly refused to give it.

The next instruction appellant contends should have been given is appellant's instruction 15 which stated:

"The Court instructs you that evidence tending to rebut the presumption of sanity need not, to entitle the defendant to an acquittal, preponderate in favor of the accused, it is sufficient if it raises in your minds a reasonable doubt."

It appears that the general subject matter of this instruction was covered by appellant's instruction 8 which was given and read as follows:

"The law presumes that a man is of sound mind until there is some evidence to the contrary. Evidence rebutting or tending to rebut the presumption of sanity need not, to entitle the defendant to an acquittal, preponderate in his favor. It is sufficient if it raises in your minds a reasonable doubt as to the defendant's sanity."

It is well settled that refusal of an instruction, although a correct statement of the law, is not error when the subject matter thereof is substantially covered by another instruction. *Lenovich* v. *State* (1958), 238 Ind. 359, 364, 150 N. E. 2d 884, 887; *Todd* v. *State* (1954), 233 Ind. 594, 595, 122 N. E. 2d 343, 344.

Appellant has also contended error was committed because of the refusal of the court to give his tendered instructions 20, 21, 22, 34 and 44.

Without unduly extending this opinion, we desire to point out that appellant's said tendered instructions were substantially covered by other instructions given. Appellant's tendered instruction number 20 was virtually identical with the court's preliminary

instruction number 10, and no error was therefore committed by the court in refusing it.

It further appears that appellant's tendered instruction number 21 was substantially covered by appellant's instruction number 14 which was given, that appellant's instruction number 22 was sufficiently covered by appellant's instructions 10, 11 and 14 which were given, that appellant's tendered instruction 34 was properly covered by appellant's instruction number 5 which was given, and that appellant's tendered instruction number 44 defining manslaughter was covered by the court's preliminary instruction number 18 and appellant's instruction number 45, both of which instructions were given.

Appellant has contended the court below erred in giving over his objections the State's instruction 5 upon the subject of will power and irresistible impulse. However, the record discloses that appellant failed to make a specific objection to the giving of this instruction before the agrument and any error with reference to it must therefore be deemed waived. See: Rule 1-7 of the Supreme Court of Indiana; *Grecco* v. *State* (1960), 240 Ind. 584, 593, 167 N. E. 2d 714 (cert. den.), 364 U. S. 893, 81 S. Ct. 227, 5 L. Ed. 2d 191; *Romary* v. *State* (1945), 223 Ind. 667, 672, 64 N. E. 2d 22, 24.

Appellant further contends the court erred in giving the State's instructions 6, 7, 8 and 9. However, the record fails to disclose any objections whatever by appellant to instructions 6 and 7, and does not disclose any specific objections to instructions 8 and 9. By not objecting specifically appellant has waived any questions as to error in the giving of said instructions.

No reversible error having been shown, the judgment is affirmed.

Myers, Arterburn and Achor, JJ., concur.

Jackson, C. J., concurs in result.

NOTE.—Reported in 188 N. E. 2d 108.