## BASH v. STATE OF INDIANA.

[No. 869S187. Filed September 25, 1970.
Rehearing denied November 16, 1970.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant was charged by indictment returned by the Marion County Grand Jury with the crime of first degree murder. Upon a plea of not guilty, trial was had by jury and appellant was found guilty of the lesser included offense of second degree murder; sentence was to the Indiana State Prison during life.

This appeal followed the overruling of appellant's motion for new trial. In that motion appellant raised several questions, only three of which are argued on appeal. To facilitate our consideration of those points argued we shall first briefly review that evidence most favorable to the state.

On the evening of September 15, 1967, Larry Barnfield, the deceased, dropped his wife off at the apartment of a friend while on the way to a music rehearsal with a band in which he played. Barnfield, along with several of his friends, proceeded to the house of another band member, one Richard Ash, where they remained until sometime around 2:00 A.M. the next morning. According to the testimony of those present, a good deal of beer was consumed by the group during the course of the rehearsal.

As the men arrived back at the parking lot of the apartment complex where the deceased's wife was staying, appellant and a friend, Tracy Thompson, were just emerging from a nearby drugstore. The deceased thought he recognized appellant as one of a group of boys that had "jumped" him a few weeks previously. When appellant and Thompson passed

the deceased and his friends, a conversation developed between the two groups. After several minutes of general discussion, the deceased succeeded in luring appellant away from the group and proceeded to get into a fight with him in the grass courtyard of the apartment complex.

Appellant was knocked to the ground and while he was lying there, the deceased and one, McCane, picked up a portable radio and police converter attachment belonging to appellant which they took back to McCane's apartment. After everyone had left the scene, Thompson persuaded the appellant to leave and return to his apartment. Appellant agreed but indicated that he intended to return later to get his radio.

When the appellant returned to the scene several minutes later he was armed with a rifle. By this time most of the men were standing on or near the front porch of McCane's apartment talking and drinking beer. The appellant testified that as he approached the scene he fired a warning shot scattering the group; the deceased jumped behind a nearby tree. The evidence is somewhat confusing as to exactly what happened next. Apparently appellant told the group and the deceased in particular that all he wanted was his radio and he would leave. When no one offered to give the radio back, appellant fired a couple more warning shots.

It was at this time that the deceased came out from behind the tree where he had taken cover with, according to appellant's testimony, a broken beer bottle in his hand. Appellant told the deceased to drop the bottle and put his hands in the air. This request was made several times but the deceased kept advancing. As the deceased advanced, appellant retreated, attempting to keep the distance between them. The deceased told appellant to lay the weapon down or as he expressed it in the colloquial he would place the weapon up the appellant's anal canal.

Appellant told the deceased to halt one more time but when he failed to do so and was within eight or ten feet, the ap-

pellant fired from the hip. The deceased coughed, grabbed his chest and fell to the ground. Appellant immediately fled the scene with his companion, Thompson, but returned later and surrendered himself to the police.

As previously indicated, several allegations of error were raised in the motion for new trial which are not argued on this appeal. This court has held on numerous occasions that grounds urged in the motion for new trial not discussed in the argument section of the brief are waived. *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76; *Short* v. *State* (1968), 250 Ind. 459, 237 N. E. 2d 258; *Waggoner* v. *State* (1949), 227 Ind. 269, 85 N. E. 2d 642.

The first point argued by appellant is that the trial court erred in denying his motion for directed verdict at the close of the state's case in chief and at the close of all evidence since there was no showing of premeditated malice.

In view of the fact that appellant was convicted of second degree murder instead of first degree murder, the point argued is of little consequence here. The question is, nevertheless, to what extent the failure to direct a verdict as to first degree murder would be prejudicial to appellant's case when submitted to the jury, where the only legally sustainable verdict would be for a lesser included offense. We need here determine the prejudicial effect of failure to direct a verdict in such a situation, however, because in our opinion it would have been improper in this case. A directed verdict is only proper where there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible to only one inference in favor of the accused. *Davis* v. *State* (1968), 251 Ind. 133, 239 N. E. 2d 601; *Hardin* v. *State* (1964), 246 Ind. 23, 201 N. E. 2d 333.

Premediatated malice encompasses the intent, consciously conceived, to take a life as well as the opportunity to reflect

on such decision. *Heglin* v. *State* (1957), 236 Ind. 350, 140 N. E. 2d 98; *Everett* v. *State* (1935), 208 Ind. 145, 195 N. E. 77. As was noted in the *Heglin* case, premeditation is a mental condition and must therefore be inferred from external acts or statements. Here, appellant left the scene of his altercation with the deceased only to return several minutes later with a loaded rifle. Warning shots were fired before the shot was fired that actually killed the deceased. Further, the evidence showed that appellant had had prior experience with firearms and was well aware of their dangerous potential. Under these facts, there clearly was sufficient evidence on the question of premeditation to go to the jury and therefore the trial court's overruling of appellant's motion for directed verdict was without error.

Appellant also challenges the sufficiency of the evidence as it relates to the element of malice. Essentially it is appellant's argument that there was no intent to take a life, but that appellant's sole purpose in securing the gun was to obtain possession of the radio and converter that had been taken from him during his earlier encounter with the deceased and his friends. It is further noted by appellant that the fatal shot was fired from the hip and did not result from the cold calculated aiming of the weapon.

Malice may be inferred from the *use* of a deadly weapon under circumstances where it is likely to cause death. *Hill* v. *State* (1969), 252 Ind. 601, 251 N. E. 2d 429; *Maxey* v. *State* (1969), 251 Ind. 645, 244 N. E. 2d 650; *Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108; *Martin* v. *State* (1957), 236 Ind. 504, 141 N. E. 2d 455. Considering the above facts, there clearly was sufficient evidence from which the jury might infer the element of malice.

Finally, it is argued that the state failed in its burden of proof by failing to prove that the bullet found near the body of the deceased was in fact fired from the rifle that was taken

from the accused at the time he surrendered himself to the police. Such failure of proof renders the verdict contrary to law. No authority is cited for this proposition, and we fail to see in what way the lack of such proof would be fatal to a conviction for second degree murder. Appellant admitted on the witness stand to having fired a shot at the deceased and that the deceased immediately grabbed his chest and fell to the ground. From these facts the jury was clearly entitled to infer that the appellant did in fact fire the fatal shot. Admittedly the situation would be different if the state had been unable to prove by direct evidence that the appellant fired the gun he had in his possession. Here, however, such fact was shown by other evidence.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., dissents with opinion.

## DISSENTING OPINION

JACKSON, J.—I am unable to agree with the determination reached by the majority opinion and dissent thereto.

Appellant was charged by indictment with the crime of "First Degree Murder". The indictment in pertinent part reads as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present DANNY BASH on or about the 16th day of SEPTEMBER, A.D. 1967, at and in the County of Marion and in the State of Indiana, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder LARRY BARNFIELD, a human being, by then and there unlawfully, feloniously, purposely and with premeditated malice shooting at and against the body of the said LARRY BARNFIELD, with a rifle, loaded with gunpowder and metal bullets, then and there held in the hands of the said DANNY BASH, and did then and there and thereby inflict mortal wounds in and upon the body of the said LARRY BARNFIELD, of which

mortal wounds the said LARRY BARNFIELD, then and there and thereby died; and so the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said DANNY BASH, in the manner and form and by the means aforesaid, unlawfully, feloniously, purposely and with premeditated malice did kill and murder the said LARRY BARNFIELD, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

To the above indictment the appellant, on arraignment, entered a plea of not guilty.

Trial was had by jury on April 21, 22 and 23, at the conclusion of which the jury on April 23, 1969, returned its verdict which reads as follows:

"We, the Jury, find the defendant, DANNY BASH, guilty of murder in the second degree as covered by the indictment."

A pre-commitment investigation report was filed in said cause May 8, 1969. The same showed appellant had no prior police or juvenile record. Thereupon the court rendered judgment as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendant be and hereby is sentenced to the Indiana State Prison during life."

Thereafter, on May 26, 1969, appellant filed his Motion for New Trial, the same in pertinent part reads as follows:

"Comes now the defendant, by counsel, and moves the Court to grant him a new trial herein for the following reasons:

1. Irregularities in the proceedings of the Court and orders of the Court and abuse of discretion by which the defendant was prevented from having a fair trial, in this, to-wit:

a. The Court erred in failing to give defendant's tendered Preliminary Instruction number 1.

b. The Court erred in failing to give defendant's tendered Prelminary Instruction number 2.

c. The Court erred in overruling the defendant's motion for a continuance of said cause.

d. The Court erred in denying the defendant's Motion for a directed verdict at the close of the State's case in chief.

e. The Court erred in denying the defendant's Motion for a directed verdict at the close of all of the evidence given in said cause.

2. That the verdict of the jury is not sustained by sufficient evidence.

3. That the verdict is contrary to law.

WHEREFORE, defendant prays the Court to grant a New Trial herein."

## "M E M O R A N D U M

The Court erred in failing to give defendant's tendered Preliminary Instructions 1 and 2 in that these instructions were the latest expression of the Indiana General Assembly concerning the punishment for second degree murder and manslaughter. Chapter 95 of the Acts of the Indiana General Assembly, 1969, approved by the Governor on March 8, 1969 changes the existing penalty for second degree murder and provides for an alternative penalty of either life or imprisonment for not less than fifteen nor more than twenty-five years. Chapter 224 of the Acts of the Indiana General Assembly, 1969, approved by the Governor on March 13, 1969 changes the existing penalty for manslaughter and retains the penalty of not less than two nor more than twenty-one years in the cause of voluntary manslaughter but reduces the penalty for involuntary manslaughter to not less than one nor more than ten years. The Court further erred in failing to grant the defendant's motion for a continuance until such time as the Acts of the General Assembly for the year 1969 were promulgated into law by the Governor.

The defendant herein was charged with the crime of murder in the first degree, which necessarily includes the crimes of second degree murder and manslaughter. At the close of the State's case the defendant moved for a directed verdict which was denied by the Court. We submit that the evidence at this point was not sufficient to sustain a conviction for either first or second degree murder and therefore the action of the Court was contrary to law. In order for the Court to permit the jury to deliberate on the issue of first degree murder the burden is upon the State to estab-

lish by evidence of probative value beyond a reasonable doubt that the death resulted from premeditated malice. The only evidence in the record at this point was that four persons, unknown to the defendant, had made suggestive advances of a sexual nature; they had hit him and poured beer on him; and that the decedent had soundly thrashed him, knocked his glasses off and stolen a radio from him. The defendant went home and got a rifle and returned to the scene and fired three shots into the air and after retreating from his assailant, fired a fourth shot. There can be no premeditation when the State's own witness, Tracy Thompson, testified that the defendant got the rifle for the sole purpose of enforcing the return of personal property stolen from the defendant by the decedent. *Lemay* v. *State* (1963), 244 Ind. 652, 190 N. E. (2) 189. As Judge Arterburn said in the case of *Heglin* v. *State* (1957), 236 Ind. 350, 140 N. E. (2) 98:

'Kristute, not the appellant, is responsible for creating the circumstances and conditions which resulted in his shooting. It is just as important to the law that the innocent people, even though they may have used poor judgment or acted foolishly in retrospect, not be convicted, as that the guilty be convicted. Injury resulting from poor or foolish judgment is a matter for the civil courts, not the criminal courts. *Miller* v. *State* (1944), 223 Ind. 50, 58 N. E. 2d 114.

This was an unfortunate incident, no doubt to be regretted by all parties, but that does not constitute a crime, neither does negligence or poor judgment under the circumstances here, constitute a crime of the degree charged.'

See also *Miller* v. *State* (1962), 242 Ind. 678, 181 N. E. (2) 633.

The verdict of the jury is contrary to law for the reason that there was never any evidence introduced by the State that the bullet found near the body of decedent was in fact a bullet that was fired from the weapon introduced into evidence. While there was evidence as to the cause of death there was no evidence before the jury that they could infer that the bullet that caused the death of decedent was fired from the rifle that was introduced into evidence.

For the above reasons defendant respectfully moves the Court to grant him a new trial herein."

The above Motion for New Trial was overruled by the Court on either the 26th or 27th of May, 1969. (The transcript at

this point is imperfectly reproduced and the exact date cannot be determined therefrom.)

Appellant's Assignment of Error is the single specification:

"1. That the Court erred in overruling the Motion for New Trial filed on behalf of the appellant."

Just a brief addition to the testimony set out in the majority opinion seems desirable. In the case at bar the appellant and a friend were accosted, while on their way to the appellant's home which was within a couple hundred feet of where the alleged offense occurred. The appellant and his friend were stopped by the group, of which decedent was a member, after the group had spent the time from about 7:15 p.m. of the previous evening until about 3:00 a.m. playing music and drinking beer, and were still drinking at the time they stopped appellant and his friend. The rifle owned by the defendant and taken to the scene was a .22 caliber Stevens. The shooting occurred after the defendant had had beer poured on him and had been spat upon by the decedent and his companions, and after he had been solicited by the decedent to engage in a homosexual act with decedent, after which the defendant had been struck in the face by the decedent without warning and knocked down and while down on the ground was hit, kicked and kneed by the decedent, who with his friends, when leaving defendant, took defendant's radio and converter into the apartment with them. Finally, even though the defendant took his rifle back with him in an effort to force the return of his radio, he was retreating from the decedent who approached him with a broken beer bottle in his hand making the threats set out in the majority opinion and continued to retreat in the face of the threats being made by decedent until finally the defendant fired from the hip at which time the decedent "* * * grabbed his chest and coughed and said 'Oh, God' and turned around and walked away." (Tr. p. 155). The appellant's testimony (Tr. p. 203) referred to in the majority opinion was "* * * I fired from the hip. Well, he coughed and said 'Phil,

Oh, God' and grabbed his chest and turned to his right toward * * * would be facing southwest towards the parking lot and started walking across the grass and the sidewalk."

There is some evidence in the record to the effect that someone in the group accompanying decendent was carrying a .22 pistol at the time of the fight between defendant and the deceased. Evidently the jury was not convinced that such was the case or determined it was immaterial. It appears from the record, without dispute, that appellant told the group, including decedent, that all he wanted was his radio and when he got that he would go away.

The case of *Heglin* v. *State* (1957), 236 Ind. 350, 140 N. E. 2d 98, cited the majority opinion, and the cases cited therein support appellant's contention as outlined in his Motion for New Trial as fully or more so than they support the majority opinion. In the case at bar, as in the *Heglin* case (*supra,* p. 355) "* * * what evidence there is, points in the direction away from the conclusion that a premeditated plan and design to murder existed."

Section 10-3404, Burns' provides:

> "Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction shall be imprisoned in the state prison during life."

It is contended by the State that malice is shown here by the use of a deadly weapon.

I recognize that the question of malice is one of fact for the jury to determine. *Landreth* v. *State* (1930), 201 Ind. 691, 696, 171 N. E. 192. However, the verdict of the jury must be supported by substantial evidence of probative value. *Schlegel* v. *State* (1958), 238 Ind. 374, 387, 150 N. E. 2d 563; *Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Yessen* v. *State* (1950), 228 Ind. 316, 319, 92 N. E. 2d 621.

In my opinion the evidence in the case at bar is insufficient to sustain the verdict on the essential element of malice and

for that reason this cause should be reversed and remanded with instructions to grant appellant's Motion for New Trial.

NOTE.—Reported in 262 N. E. 2d 386.