WILLIAM JAMES MCCURDY V. STATE OF INDIANA.

[No. 774S133. Filed March 19, 1975.]

*Craig Eldon Pinkus, Goodman, Pinkus & Beeler*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Douglas W. Meyer*, Deputy Attorney General, for appellee.

HUNTER, J.—Appellant was indicted for first degree murder. He pleaded not guilty and was tried by jury. He was found guilty as charged and sentenced to imprisonment for life. This belated appeal results from the overruling of appellant's motion to correct errors.

## I.

The first issue presented is whether the trial court erred in failing to grant appellant a new trial on the basis of newly discovered evidence.

> A party seeking a new trial on the basis of newly discovered evidence must demonstrate:

(1) that the evidence alleged to be newly discovered could not have been discovered before trial by the exercise of due diligence on behalf of the party seeking the new trial; and

(2) it must be shown that the newly discovered evidence is of such a nature that had it been admitted at trial, a different verdict would probably have been returned. *Keyton* v. *State,* (1972) 257 Ind. 645, 649-50, 278 N.E. 2d 277, 279-80; *Young* v. *State,* (1974) Ind. App., 316 N.E.2d 435, 441-42.

The following facts are germane to appellant's first issue. While appellant was in jail awaiting trial, his brother filed a petition alleging that appellant may have been of unsound mind at the time of the murder and that he might then be of unsound mind. A psychiatric evaluation of the defendant was ordered and performed by two court-appointed physicians. Both physicians indicated that defendant had suffered a "transient paranoid reaction" while in jail. However, both concluded that the condition had cleared, did not interfere with his comprehension, and would not hamper his assistance in preparing his defense. Moreover, both physicians were of the opinion that defendant was of sound mind when the crime took place. Appellant then filed a motion for continuance and for private psychiatric observation. The motion was granted.

Appellant was then seen on several occasions by his private psychiatrist, who diagnosed defendant's condition as subacute paranoid-schizophrenia, but concluded that appellant was fit to stand trial. After these findings, appellant, pro se, withdrew the suggestion of unsoundness previously filed in his behalf. Thereafter, defendant was tried and convicted. Counsel for appellant sought a pre-sentence examination which was granted. Again defendant was examined, and it was recommended that he be institutionalized and given psychiatric care. Meanwhile, defendant's private psychiatrist replied in a letter solicited by defense counsel, "There is no question but that his fear of further jail confinement has no doubt affected his participation with his lawyer in discussion about the subject of plea bargaining." Appellant contends that the foregoing "newly discovered evidence" indicates that he was incompetent at the time of trial and requires his conviction be vacated and a new trial granted.

With regard to the pre-sentence examination report, obviously no amount of diligence could have produced a report not in existence. Hence, appellant has met the first requisite for a new trial based on this report. The report, however, does not conclude that defendant was incompetent at the time of trial. Thus, had the report been available, it is not reasonable to expect that the verdict would have been different.

With regard to the letter submitted after trial by appellant's private psychiatrist, we believe counsel for appellant was not diligent in soliciting the evidence on behalf of appellant. Assuming arguendo that the contents of the letter could not have been discovered by appellant prior to trial, we, nevertheless, conclude that the letter would not have resulted in the reasonable possibility of a different verdict. The letter did not conclude that defendant was legally incompetent at the time of trial. It did state that appellant's paranoia would probably worsen if he were returned to a jail environment.

There was no error in overruling appellant's motion for

new trial on the basis of the foregoing "newly discovered evidence."

## II.

Appellant asserts that the trial court erred in refusing to give defendant's Instruction No. 3. That instruction stated:

"You are instructed that the inference of malice from the intentional use of a deadly weapon must be established by fact, and not be an inference based upon another inference."

Appellant's instruction was derived from *Davis* v. *State*, (1936) 210 Ind. 550, 2 N.E.2d 983.

In *Davis,* defendant admitted the act, but argued that the killing was accidental. The trial court gave the following instruction:

"The court instructs the Jury that if you should find from all the evidence in the case beyond a reasonable doubt that the defendant Ward Davis did shoot and kill Annav France, using a deadly weapon in such manner as was likely to and did produce death, the purpose and intention on the part of the defendant Ward Davis to kill may be inferred from the act itself. And if you should further find from all the evidence beyond a reasonable doubt that the killing was done purposely without sufficient justification, legal excuse, or reasonable provocation, then malice may also be inferred from such act." 210 Ind. 550, 551-52; 2 N.E.2d 983.

Insofar as relevant here, the court in *Davis* found the instruction erroneous since:

". . . [It] infers a 'purpose and intention' to kill although the killing may have occurred by reason of sudden heat, negligence, or by purely accidental means. * * * The first sentence in the instruction tells the jury that the purpose and intention to kill may be inferred from the act itself. This inference is made the basis in the next sentence for a further inference of malice. The instruction is based upon inferences not drawn from proved facts. The law is that malice may be inferred from the intentional use of a deadly weapon. *But the intentional use must be established by fact, not by an inference based upon another inference.*" (Emphasis added.)

Appellant's Instruction No. 3 does not state that intentional use must be established by fact, but rather that malice must be established by fact. It, therefore, misstates *Davis* and might have been rejected on that ground alone. Had defendant tendered an instruction properly stating the rule in *Davis,* its rejection would also have been proper for defendant here did not contend the killing was accidental.

The trial court rejected Instruction No. 3 on the basis that it was adequately covered by other instructions. To resolve the propriety of the trial court's rejection, it is necessary to consider the facts which appellant deems required the giving of the instruction.

The state introduced into evidence three slugs removed from the decedent. These slugs identified the probable death weapon as a .38 revolver. Appellant did not admit possession of such a weapon, nor was one introduced by the state.

Witness Larry Harden testified on cross-examination as follows:

[Questions by Mr. Pinkus.]

Q. "I believe your exact words in your testimony were that you saw fire coming out of a pistol, and then Mr. Robinson [Prosecutor] asked you if you seen the pistol and you said no."

A. "I didn't see the pistol. I seen fire coming from a pistol, what I assume was a pistol."

Q. "Now when you say you saw fire, can you describe to us what that was, in some more detail, other than saying fire?"

A. "Well, fire from a gun."

Q. "Do you own any weapons?"

A. "No, I do not."

Q. "Do you have any experience with weapons?"

A. "No."

Q. "None? Now, did you see this fire more than once?"

A. "Yes."

\* \* \*

Q. "Did you see anything in his hand?"
A. "Yeah, fire coming from his hand. I didn't see the gun, if it was a gun or not."
Q. "Do you know if it was a gun?"
A. "What else comes out of a gun, but fire?"
Q. "I'm asking you if you know it was a gun?"
A. "No, I don't."

Witness Roache testified on direct examination:

[Questions by Mr. Robinson.]

Q. "Alright, and was the man Harden talking to the same man that did the shooting?"
A. "Yes, sir."
Q. "Did you see the man's face?"
A. "No. I was some distance away, so I did not, and it was dark."
Q. "Now, at the time of the shooting, did you hear shots? Did you hear the shots?"
A. "Yes, sir."
Q. "Did you see anything coming from the person whom you say was doing the shooting?"
A. "The flashing of the gun. Flashes."
Q. "Did you hear any other shots, other than the . . . ?"
A. "No."
Q. ". . . flashes that came from this person?"
A. "No, sir."
Q. "When the shooting started, what did you do?"
A. "I ducked behind a white shed, out back there."
Q. "For what reason did you do that?"
A. "Because I knew the man knew I was out there, and I didn't want to—I knew he had some bullets left and I didn't want to chance it, so I just ducked behind the white shed."
Q. "Did you see what happened to this man?"
A. "He took off to the right, and that was all I saw."

From the foregoing testimony, appellant correctly concludes that the jury was required to infer the existence of a deadly

weapon which, in turn, served as the basis for an inference of malice when its intentional use was shown. Appellant errs in his conclusion, however, that malice is thus the product of an inference upon an inference. The state is not required to produce the murder weapon. *Mandich* v. *State,* (1946) 224 Ind. 209, 66 N.E.2d 69. When the state proves the existence of a weapon by circumstantial evidence as here, that evidence, if believed by by the jury, becomes a fact just as if direct evidence (i.e., the weapon) had been introduced.

The intended function of Instruction No. 3 was to urge the jury to recognize the absence of positive identification of any particular weapon in the defendant's hand. This function was served by the trial court instruction on circumstantial evidence. The trial court did not err in its refusal of defendant's tendered instruction.

## III.

Appellant asserts that the state failed to prove malice. The state relies upon the familiar proposition that malice may properly be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to cause death. *Wardlaw* v. *State,* (1972) 259 Ind. 282, 286 N.E.2d 649, *cert. denied* 411 U.S. 908. As stated above, we believe there was sufficient circumstantial evidence to place a deadly weapon in the defendant's hand. Other testimony established that as the shots were fired, the decedent at first ran and then dropped to the floor. The three slugs removed from the decedent illustrate appellant's intentional use of the weapon in a manner reasonably calculated to cause death. As we have previously stated, "Not only the number but the lethal character of the wounds articulates an attack of such intensity that the jury could reasonably infer that malice and purposefulness did exist at the time the wounds were inflicted on the victim." *Maxey* v. *State,* (1969)

251 Ind. 645, 244 N.E.2d 650. There was sufficient evidence to sustain the finding of malice.

## IV.

Appellant controverts the finding of premeditation. He argues that the time elapsing between the firing of the fatal shots is insufficient as a matter of law to have allowed him time to reflect upon the taking of decedent's life. As stated in *Everett* v. *State*, (1935) 208 Ind. 145, 150, 195 N.E. 77, 79, ". . . it is the very essence of the crime that there should have been an opportunity for premeditation after the mind had consciously formed the design to take life." However, the law prescribes no particular period of time which must elapse. Hence, as further stated in *Everett, supra,* "Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by *deliberate thought* or premeditation, although they follow as instantaneous as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree." (Emphasis added.)

The emphasized portion of the foregoing statement indicates that it is the fact of deliberation that is important, rather than the length of time it may have continued. Premeditation is a mental function which is generally susceptible of proof only by the external manifestations of the perpetrator. We believe that the following testimony, pointing out the gap between the first shot which struck the decedent and the subsequent shots which dropped him to the floor, provides a sufficient period of time from which the jury could infer that defendant gave deliberate thought to completing his act with specific intent to kill the decedent.

[Questions by Mr. Robinson, answers by witness Gordon Jenkins.]

Q. "I'll withdraw that. Did you hear anything unusual happen after Mr. Dawson left to go to the restroom?"
A. "Yes, I did."

Q. "And what did you hear?"

A. "Some shots."

Q. "Alright, and how many did you hear, if you know?"

A. "Well, at first, there was one shot. Then a few seconds later there was about three or four more."

Q. "Alright, and what did you see and what did you hear?"

A. "Well, I was sitting at the bar finishing my drink, because he said, you know, we'll be ready to go as soon as he go use the restroom. So, just as I finish my drink, well, a shot caught my attention and a whole lot of commotion in the back. I could hear people, you know, getting, you know, upset and everything, and just as I had turned I seen Henry coming down the aisle-way toward the—coming back towards the juke box."

Q. "Now, was this where the juke box was?"

A. "Right."

Q. "Alright, and then what did you next see?"

A. "Well, he was running as if something was wrong with him. I guess the first shot had already hit him, because the way he was running, and he leaned on the juke box, and that's when three or four more shots was hitting him, because while he was on the juke box he was flinching like, you know, they was penetrating through his body."

Q. "And what did you next see, sir?"

A. "Then I seen him hit the floor."

Moreover, the pathologist testified that decedent died from multiple bullet wounds, two shots striking him in the chest area, and one in the right buttock. While the pathologist had no opinion as to the order of infliction of the foregoing wounds, the jury might properly have considered the buttock wound as corroborating the above testimony. We believe there was sufficient evidence from which the jury could conclude that the killing was premeditated.

## V.

Appellant argues that the state failed to prove transferred intent. The state presented some evidence, which if believed

by the jury, would have indicated that defendant intended to kill Larry Harden, rather than the decedent whom he did not know. The state also tendered an instruction on transferred intent which was given without objection by the defendant. The state was not required to prove that defendant intended to shoot someone other than the decedent, if it could establish that the killing of the decedent was intentional.

Appellant did not assert that the death was accidental, and the above discussed evidence sufficiently sustains the jury's conclusion that the killing was intentional.

## VI.

Appellant assigns as error the refusal of the trial court to receive into evidence a .22 caliber blank pistol found at the scene. The admission of physical evidence is governed by the same rules of relevancy and materiality governing the admission of testimonial evidence. *McPhearson* v. *State,* (1969) 253 Ind. 254, 253 N.E.2d 226. Appellant argued that the pistol was capable of producing the sights and sounds testified to by witness for the state. There was no testimony, however, which placed the blank pistol in the hand of either the decedent or defendant. There was testimony that the decedent died from bullet wounds fired from a .38 caliber weapon. As McCormick points out, relevancy in logic is the tendency of evidence to establish a proposition which it is offered to prove. McCORMICK ON EVIDENCE, § 185, (2d ed. 1972). In a logical sense, a blank pistol offered to prove that it is capable of creating sounds and emitting flashes is therefore relevant. In a legal sense, however, relevancy is the tendency of the evidence to establish a material proposition. In view of testimony that the .22 blank pistol could not have been the murder weapon, and in the absence of testimony placing the blank pistol in the possession of the decedent, the blank pistol was offered to prove a proposition which was not material to the case at hand, was not therefore

relevant in the legal sense of that term, and was quite properly excluded by the trial court.

## VII.

Appellant objects to the exclusion of photographic evidence showing a recreation of the crime scene and offered to impeach a state witness. When the photographs were offered, the photographer replied upon preliminary question that he did not know whether the photographs accurately portrayed the interior of the tavern as it appeared at the time of the murder on May 6, 1972. As previously stated by this Court, "For a photograph to be admissible it is first necessary to establish that it is a true and correct representation of the thing which it intends to portray." *Johnson* v. *State,* (1972) 258 Ind. 648, 655-56, 283 N.E.2d 532, 536. Appellant's failure to meet the foregoing requirement establishes the correctness of the trial court's ruling.

## VIII.

Appellant contends the admission of State's Exhibit No. 2 was erroneous because it contributed nothing to the state's case, except allowing the jury to view a gruesome picture of the decedent who had been moved from the place where he had fallen. We disagree. State's Exhibit No. 2 clearly depicts the point of entry of one of the chest wounds and was clearly relevant to show the nature and extent of decedent's wounds. *Williams* v. *State,* (1973) 260 Ind. 237, 294 N.E.2d 793. The objectionable aspect of the photograph, blood about the victim's nose and mouth, was not so prejudicial as to require the exclusion of the photograph, particularly in view of State's Exhibit No. 1, not objected to by the defendant, which pictures the decedent after he fell, lying face down in a pool of blood. State's Exhibit No. 2 was properly admitted.

## IX.

Appellant alleges that no evidence of flight was presented to warrant the giving of an instruction thereon by the trial court. Evidence of flight was presented by witness Roache and is set out above. Appellant maintains that such evidence will not support the giving of the instruction since Roache was unable to positively identify him as the person fleeing. Roache did identify defendant as the same man he had earlier observed arguing with Larry Harden. Other testimony established that Harden left the tavern to speak to the defendant during the same time span wherein Roache's observations were taking place. We believe the instruction was properly given.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Givan, C.J., Arterburn and Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 324 N.E.2d 489.