WILLIS DEVON ADKINS *v.* STATE OF INDIANA.

[No. 374S56. Filed March 24, 1975.]

*Stephen Johnson,* Deputy Public Defender, *Biddinger & Johnson,* for appellant.

*Theodore L. Sendak,* Attorney General, *Alan L. Crapo, Jr.,* Deputy Attorney General, for appellee.

DeBRULER, J.—Willis Adkins was convicted of murder in the second degree in a trial by jury in the Grant Circuit Court, the Honorable A. Morris Hall, Judge, presiding. Adkins was convicted in the shooting death of his wife.

In Indiana, second degree murder is defined by statute as follows:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree. . . ." Ind. Code § 35-1-54-1, being Burns § 10-3404.

Appellant's allegation of error is that there was insufficient evidence to sustain the verdict of guilty of second degree murder. In reviewing this allegation we do not weigh the evidence, but only examine that evidence and reasonable inferences to be drawn from it which support the verdict. The conviction must be affirmed if upon such examination, there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Fair* v. *State,* (1969)

252 Ind. 494, 250 N.E.2d 744; *Glover* v. *State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

Specifically, appellant contends that the evidence is insufficient to support the jury's determination that in shooting his wife, he did so purposely and maliciously. He claims that the evidence would support only a voluntary killing in a sudden heat and requests this Court to order the judgment and sentence reduced to manslaughter. Appellant relies primarily upon the fact analysis in *Dickens* v. *State,* (1973) 260 Ind. 284, 295 N.E.2d 613, where upon a review of evidence this Court made such an order reducing the sentence. Voluntary manslaughter is defined by statute as follows:

> "Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, is guilty of voluntary manslaughter. . . ." Ind. Code § 35-13-4-2, being Burns § 10-3405.

On the day of the shooting, appellant's wife picked him up from work at 7:30 a.m. He had received his paycheck before quitting time, and together they proceeded to the Edgewood Tavern, arriving there about 8:00 a.m. While there they each drank about six beers and were in a friendly mood. She left the tavern and cashed the defendant's check. When she returnd to the tavern, they purchased a case of beer and left. On the way home they purchased groceries and gasoline, arriving home at about 10:00 a.m. At home they watched television in the kitchen and continued drinking beer.

Three of decedent's daughters were in school at this time, leaving at home, the appellant, the decedent, their three small sons, and the decedent's mentally retarded daughter, Jeannie Riddle. Jeannie was pregnant at the time, twenty-two years of age, unmarried, and a problem to the family. An argument erupted between Jeannie and the three small boys during which she called them "bastards." Appellant "called her down," and she went to her room and played her radio full blast. Appellant called her down again, but she con-

tinued to let the radio play full blast, so appellant turned off the master power switch to the house. Jeannie then switched her radio to batteries and continued playing it full blast, so appellant went to her bedroom. She handed the batteries to him.

While appellant was in the bedroom scolding his step-daughter, the decedent got a .22 rifle from her bedroom, approached her daughter's room, threatened to kill appellant, and fired two shots in the direction of appellant, one burying itself in the ceiling of the daughter's bedroom and the other knicking appellant's ear. Appellant struggled with decedent, took the gun from her and subsequently shot her through the head.

Appellant immediately sought to aid his wounded wife, ordering Jeannie to get the police and an ambulance. The wife died on the way to the hospital in an ambulance. Appellant was arrested and gave a full voluntary statement of these events to the police.

The evidence further shows that appellant and decedent were about the same height, however the decedent weighed approximately forty pounds more than appellant. She was a large boned woman, strong, could fight, and at the time of her death carried a blood alcohol of .123%. She was in her early forties; he in his early fifties.

Focusing upon the events which immediately preceded the fatal shooting, we see from the record that those events are described by the appellant on three separate occasions. Each of these three separate versions was presented to the jury. The first was given by appellant at his residence at the time of his arrest at noon. It was testified to by one of the investigating officers. The second is a written statement given at the jail six hours after his arrest. The third is the appellant's testimony at the trial. Each of these versions is basically consistent. The decedent, at the time she was shot by appellant, was standing in the hallway of the house at

the doorway to her daughter Jeannie's bedroom. Appellant was in posesssion of the rifle at the other end of the hallway at a distance of 8-10 feet. The shooting occurred in the aftermath of a violent argument during which decedent shot twice at appellant, hitting him once in the ear. All are consistent in that appellant admits to struggling with decedent and disarming her. However, a crucial difference exists between the written statement and appellant's trial version. In his written statement he states that he disarmed the decedent, threw the gun on the bed in his bedroom, and continued the argument over Jeannie back in the kitchen, and then decedent threatened to go get the gun again. Whereupon appellant went and got the gun, pointed it at his wife as she stood in the hallway, and shot her. In court, on the other hand, appellant repudiated part of the statement, and instead testified that after decedent shot twice at him, hitting him once in the ear, he disarmed her in a struggle, stumbled down the hallway backwards and then shot her. Appellant's version given at the trial was favorable to his contention that the shooting was an integral part of the struggle for the gun, and that version, if standing alone, would support only a killing in a sudden heat. *Dickens* v. *State, supra.* However, if after suffering the attack by his wife, appellant took the rifle from her and put it back in the bedroom on the bed, then a significant period of time would have elapsed. This period of time would have been sandwiched between the disarming of decedent and her fatal shooting. Crediting the written statement, as the jury had a right to do, that same period would have been appreciable. During it appellant would have had possession of the rifle, would have walked into his bedroom and deposited it on the bed, would have returned toward the kitchen and resumed the verbal dispute with decedent, would have heard her threaten him again, would have returned to the bedroom and picked up the rifle, and finally would have turned, raised the rifle and fired.

There is no question, after considering this evidence, that the decedent's conduct was sufficient provocation in legal contemplation, nor that such conduct in fact precipitated in appellant a sudden heat. However, in order to justify the result sought by appellant here, the only evidence presented must show that the shot was fired while appellant was prevented from cool reflection by his state of rage. *Warren* v. *State,* (1962) 243 Ind. 508, 188 N.E.2d 108; *Henning* v. *State,* (1885) 106 Ind. 386, 6 N.E. 803. Such are not the only facts shown by the record. Here the jury reasonably could have inferred from the delay described above that the poignant state of rage and fear precipitated by the decedent's violent conduct had subsided and that he then purposely and maliciously shot and killed her as she stood unarmed in the hallway.

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 324 N.E.2d 817.